No. 9843.

## HENDRICKS ET AL. *v.* FRANK ET AL.

TRIAL.—*Issues.*—*Jury.*—*Count.*—*Fraud.*—*Contract.*—*Statute Construed.*—Complaint by several separate creditors of S., averring their respective claims upon account, and that S., being insolvent, had transferred his goods and claims ($8,000) to other creditors, made defendants with S., upon a writ-

ten agreement that after disposing of goods and collecting claims enough to satisfy their demands ($2,000) they would return the residue to S. or his other creditors; that afterwards, without any new consideration, and without the knowledge or consent of the plaintiffs, and to defraud them, the written contract was so modified as to make the title of those other persons absolute, without any condition to return the property as was first agreed, and that they had converted all of it to their own use, and removed it beyond the reach of execution. Issues were made and tried by jury.

*Held,* that the suit was formerly of an exclusive equitable jurisdiction, and under section 409, R. S. 1881, should be tried by the court, and not by jury.

SUPREME COURT.—*Appeal.—Parties.*—After submission of a cause by agreement, in the Supreme Court, it is too late to object that the proper parties to the appeal have not been made.

From the Hamilton Circuit Court.

*J. E. McDonald, J. M. Butler, G. C. Butler, T. J. Kane, T. P. Davis, J. L. Griffiths* and *A. F. Potts,* for appellants.

*F. M. Trissal, D. Moss, R. R. Stephenson* and *W. S. Christian,* for appellees.

MORRIS, C.—The complaint in this case contains two paragraphs. The first is as follows:

"Mayer Frank, Henry Frank, Mary B. Loeb, Jacob S. Frank (composing the firm of Frank Bros. & Co.), Alfred Seasongood, Charles Seasongood, Lewis Seasongood, Elias Noble (composing the firm of Seasongood & Co.), and A. B. Gates (composing the firm of A. B. Gates & Co.) *v.* John W. Sanders, Victor K. Hendricks, William D. Cooper, John W. Murphy, Harold B. Hibben, Franklin Landers, Joseph B. Ship, William D. Bridges, Albert P. Sanders, guardian of John W. Carson.

"The plaintiffs above named complain of the defendants above named, and say that the defendant John W. Sanders is indebted to the firm of Frank Bros. & Co., for goods sold and delivered, in the sum of $500, which is due and unpaid, the items of which indebtedness are set forth in a bill of particulars herewith filed, marked 'A'; that he is indebted to the plaintiffs Seasongood & Co. in the sum of $420, which is due

and unpaid, and upon and for which judgment was rendered in the Hamilton Circuit Court, on the 26th day of April, 1881, unsatisfied, unappealed from and unreversed; that he is also indebted to A. B. Gates & Co. in the sum of $121, being the amount of principal, interest and costs on a judgment recovered by them before one Nevill Redman, a justice of the peace in and for Jackson township, Hamilton county, Indiana, against said John W. Sanders, on the 4th day of March, 1881, which judgment is in full force, unpaid and unappealed from; that all of the indebtedness aforesaid was contracted prior to the 15th day of February, 1881; that, at the date last aforesaid, the said John W. Sanders was the owner of a stock of merchandise, notes and accounts, of the value of $8,000, and was at the time insolvent, and did not have then, nor does he now have, a sufficient amount of other property, subject to execution, to pay his debts; that on said last named date, he entered into a written agreement with his co-defendants (a copy whereof can not be filed herewith, for the reason that the same is in the possession of the defendants or lost), which said agreement was, in substance and effect, as follows: Said Sanders thereby transferred all of said notes and accounts and delivered all of said stock of goods to his said co-defendants, in consideration of which transfer and delivery his said co-defendants undertook and agreed that they would sell and dispose of a sufficient quantity of said goods and collect of said notes and accounts enough to pay an indebtedness of $2,000 owing them, said co-defendants, by said John W. Sanders, and when that amount had been realized, would return the residue of said goods, notes and accounts to the said John W. Sanders, or his other creditors. In pursuance of which agreement said co-defendants took possession and control of all of said property, but immediately thereafter, without any new consideration, but for the fraudulent purpose of cheating and defrauding the plaintiffs out of the benefits of said first agreement, and for the purpose of securing all of said property for themselves, and thereby cheating, hindering,

delaying and defrauding the plaintiffs, entered into another agreement with the said John W. Sanders, whereby the terms of the said agreement hereinbefore recited were, without the knowledge and consent of the plaintiffs, changed so as to transfer and deliver all of said property to the said co-defendants absolutely, without any condition whatever as to the residue of said property being returned to the said Sanders or his other creditors; that when said last named agreement, changing the first mentioned agreement, was entered into, said John W. Sanders did not (nor does he now) have other property subject to execution, sufficient to pay his debts; that, after said agreement was entered into, said co-defendants of said Sanders appropriated all of said notes, accounts and goods, to their own use, collected said accounts and notes, and sold all of said goods to parties unknown to the plaintiffs, and have removed the same beyond the reach of an execution that might be issued against said Sanders; that the value of the goods and the proceeds of the notes and accounts so appropriated is $8,000."

The plaintiffs pray judgment against Sanders for the sums respectively due them, and that the co-defendants may be required to account for and pay to the plaintiffs a sufficient amount to pay such judgments, and for further relief.

The second paragraph is the same as the first, except that it does not allege any change in the contract made between Sanders and his co-defendants on the 15th day of February, 1881. It asks that said contract be enforced for the benefit of the appellees and for the payment of their respective demands.

The defendants below, except Sanders, demurred separately to each paragraph of the complaint. The court overruled the demurrers. John W. Sanders made default. The defendant Bridges filed an answer in denial of the complaint. He also filed an answer disclaiming any interest in the suit. The defendants, other than Bridges and Sanders, filed an answer in two paragraphs, the first being the general denial. Issue

was taken on the second paragraph. A third paragraph of the answer was filed, upon which issue was taken. The cause being put at issue, the plaintiffs below demanded a jury to try the same. To this the appellants objected, insisting that under the law the issues should be tried by the court. The objection was overruled, and the cause submitted to a jury for trial, to which the appellants properly excepted. The jury returned a verdict in favor of Seasongood & Company against the appellants and Albert P. Sanders, and in favor of Mayer Frank & Co., against the same parties. The suit had been dismissed as to A. B. Gates & Co. The appellants moved for a *venire de novo;* the motion was overruled. They then moved for a new trial, and this motion was also overruled, and judgment rendered in favor of the appellees, in accordance with the findings of the jury. The evidence is in the record by bill of exceptions.

The errors assigned question the rulings of the court upon the demurrers to the complaint and the several motions of the appellants.

The appellees move to dismiss the appeal on the ground that Albert P. Sanders, against whom judgment was rendered, does not join in the appeal, and has not been notified of the same. We think the motion should be overruled. The cause was submitted for a hearing in this court upon the written agreement of the parties, without objection. Such submission must be regarded as a waiver of the objection now urged. *Easter* v. *Severin,* 78 Ind. 540; *People's Savings Bank of Evansville* v. *Finney,* 63 Ind. 460; *Field* v. *Burton,* 71 Ind. 380.

The appellants insist that the facts stated in the appellees' complaint would have been cognizable prior to the 18th day of June, 1852, only in a court of equity; that they would have constituted a cause of exclusive equitable jurisdiction; that an action at law prior to the 18th of June, 1852, could not have been maintained upon the facts as they are stated in the complaint; hence they insist that the court below must

have erred in submitting the cause to a jury for trial, or in overruling their demurrer to the complaint.

The appellees contend that the cause is not one of exclusive equitable jurisdiction as the law stood prior to June 18th, 1852, but one of concurrent jurisdiction, and that, therefore, the cause was properly submitted to a jury for trial.

Section 409 of the code of 1881 provides as follows:

" Issues of law and issues of fact in causes that, prior to the 18th day of June, 1852, were of exclusive equitable jurisdiction, shall be tried by the court."

The word "causes," as used in the above section, is equivalent to, and means the same as, the word "suits." The latter word might be substituted for the former, without changing the meaning of the section. The word "causes," as used, does not mean "subjects." A court of equity might have exclusive jurisdiction of a suit relating to a subject of which it has only concurrent jurisdiction. Upon the general subject of fraud courts of equity have concurrent jurisdiction with courts of law; but in a cause or suit to rescind a contract for fraud, it had, in June, 1852, exclusive jurisdiction. So, too, if a debtor should make an assignment for the benefit of creditors, upon the condition that they release and discharge him for half the amount due them, his creditors might treat the assignment as void, proceed against their debtor at law, and attach or levy upon the assigned property; but if, in such case, they chose to abide by the assignment, and should sue the assignee, to compel him to account or to execute his trust as assignee, the cause would be one of which a court of equity, prior to the 18th of June, 1852, would have had exclusive jurisdiction; and the issues in such a cause must, under the present statute, be tried by the court. The manifest purpose of the above statute is to dispense with a jury in the trial of issues in causes which, before the adoption of the code, were triable by the court as a court of equity. To determine whether a court of equity would have had exclusive jurisdiction of the cause in hearing before the adoption of the code of 1852, we must look

to the complaint, the rights and interests involved, and the relief demanded.

Could a court of law, prior to June 18th, 1852, have taken jurisdiction of, and tried, the cause of action set forth in the complaint? The appellees did not have the legal title to the property described in the complaint. The appellants were not their debtors, had made no contract with them, nor had they, according to the statements of the complaint, taken possession of any property in which appellees had a legal interest. All that is claimed in the second paragraph is that the appellants had, by a contract with Sanders, got control of property which they had agreed to manage for the benefit of the appellees. At law, the appellees could claim no interest in this contract, nor could they maintain a suit upon it. At law, the right of action is vested solely in the party having the strict legal, in exclusion of mere equitable, title. "If a bond be given to A. conditioned for the payment of money to him for the use or benefit of B., or conditioned to pay the money to B., the action must be brought in the name of A., and B. can not sue for or release the demand." 1 Chitty Plead. 3. At law, the appellees could not, prior to June 18th, 1852, have maintained an action upon any of the contracts alleged in the complaint. *Bird* v. *Lanius*, 7 Ind. 615; *Salmon* v. *Brown*, 6 Blackf. 347; *Farlow* v. *Kemp*, 7 Blackf. 544; *Britzell* v. *Fryberger*, 2 Ind. 176; *Conklin* v. *Smith*, 7 Ind. 107. Treated as an action at law, the complaint would be clearly bad. It not only shows that the appellees have no legal interest in the contracts made between Sanders and the appellants, but that they have no legal interest in the property embraced in those contracts. If we regard the suit as at law, the complaint is clearly bad, for the reason that it alleges no joint cause of action in the appellees. Their claims against Sanders are distinct and independent. One firm has no interest in, or right of action to, the causes of action alleged by others. *Berkshire* v. *Shultz*, 25 Ind. 523; *Griffin* v. *Kemp*, 46 Ind. 172; *Neal* v. *State, ex rel.*, 49 Ind. 51.

But in equity the rule is different. The party for whose benefit a contract is made may sue upon and enforce it. *Bird* v. *Lanius, supra.* It is in equity alone that the appellees could reach any benefit secured them by the contract made between Sanders, their debtor, and the appellants. So, too, they could only reach funds in the hands of the appellants, as the proceeds of the sale of the goods mentioned in the complaint, by proceedings in the nature of a bill in equity. If liable, at all, to the appellees, the appellants are so liable as trustees. *Gimbel* v. *Stolte,* 59 Ind. 446.

The complaint, in its form and substance, is in the nature of a bill in equity, seeking to enforce a contract made by other parties for their benefit, and to charge the appellants as trustees, liable to account to them for funds in their hands as such. Upon the facts stated we think the appellees are entitled to some equitable relief, and that the complaint is, therefore, good; but we also think that, prior to the 18th of June, 1852, a court of equity would have had exclusive jurisdiction of the cause stated in the complaint against the appellants, and that they had, therefore, a right to have the issues in the cause tried by the court.

The appellees contend that a legal cause of action is stated in the complaint against John W. Sanders. In a limited sense this is true; but it is stated rather for the purpose of showing their right to proceed equitably against the appellants than for the purpose of obtaining judgments against Sanders. Sanders made default, and there was nothing to try as against him. Besides, the demand for judgment against Sanders was no part of the cause of action against the appellants, nor was it necessary that any judgment should be rendered against him in order to secure the relief demanded against the appellants. The court might have found the amounts due from Sanders to the appellees, and, without rendering judgments for them against him, ordered the application of any sum found in the hands of the appellants as trustees, to its payment, as was formerly done in equity.

We think the court erred in submitting the issues in the cause to a jury for trial, and that, for this error, the judgment below should be reversed.

Per Curiam.—It is ordered, upon the foregoing opinion, that the judgment below be reversed, at the costs of the appellees.