Filed March 5, 1884.

---

No. 9860.

ISRAEL v. JACKSON ET AL.

EQUITY.—*Fraud.*—*Action to Set Aside Antenuptial Contract.*—*Trial.*—*Discharge of Jury.*—*Practice.*—A suit by a widow to set aside an antenuptial agreement, and deeds afterwards executed in accordance therewith, for fraud in procuring their execution, and for partition of the real estate of which her husband died seized, is of exclusive equitable cognizance, and if the court impanel a jury to try the question of fraud, it may, on hearing the plaintiff's evidence, discharge the jury and for itself find for the defendants, if the evidence will warrant that finding.

From the Marion Circuit Court.

*J. H. Ewick, F. J. Mattler, H. W. Harrington* and *A. B. Young,* for appellant.

*E. F. Ritter, L. Ritter, E. T. Johnson, R. N. Lamb* and *S. M. Shepard,* for appellees.

NIBLACK, J.—Fannie Israel, the plaintiff below and the appellant here, was the second wife of one Willis Barnett, now deceased, to whom she was married on the 14th day of September, 1864. At the time of the marriage Barnett had four children by his first wife, three of whom, to wit, Huldah J., since intermarried with Henry C. Jackson, John F. Barnett and James A. Barnett, still survive, and are the appellees in this appeal. The appellant and Barnett, the decedent, continued to live together as husband and wife for more than nine years. In February, 1874, a separation having taken place, Barnett filed his complaint for a divorce in the superior court of Marion county, charging the appellant with cruel treatment and abandonment. The appellant appeared by her attorney to that action, and upon a hearing a divorce

was decreed, and by agreement of parties the sum of $1,300 was adjudged to the appellant for alimony. In August, 1874, which was after the divorce was decreed, Barnett executed his last will and testament, devising and bequeathing his entire estate to his two sons, but charging it with the payment of a sum of money to his daughter, Mrs. Jackson.

In September or October, 1877, the appellant and Barnett, from whom she had been divorced, were remarried, but before the marriage ceremony took place she and the said Barnett mutually executed what purported to be an antenuptial agreement in writing, by which she, for the alleged consideration of $100, agreed to release and waive all claims to the property which the said Barnett then owned, or which he might thereafter acquire.

Sometime in January, 1878, Barnett died, leaving the will executed by him as above unrevoked, and an estate consisting mostly of real estate, and without issue by his intermarriage with the appellant. This will was soon afterwards presented for probate, when Mrs. Jackson and her husband filed objections to its validity as the will of the decedent. A compromise soon followed, in which it was agreed, amongst other things, that a part of the real estate left by the decedent was to be conveyed to Mrs. Jackson. Accordingly the entire family, including the appellant, met, on the 6th day of February, 1878, at the office of one of the attorneys employed in the settlement of the estate, and the two sons of the decedent thereupon conveyed to Mrs. Jackson a part of the real estate devised to them by the will, and Mrs. Jackson and her husband in turn executed a conveyance to the sons, relinquishing all claim to the remainder of the real estate so devised to them. The appellant joined in the execution of both of these conveyances, seemingly without any consideration moving to her, and apparently for the purpose of merely relinquishing all claims she might be supposed to have to the property conveyed. In connection with, however, and as may have been understood to have been a part of, the com-

promise, the two sons of the decedent either assumed to pay or assured the payment of certain sums of money to the appellant, amounting, in the aggregate, to at least thirteen, or may be as much as fourteen hundred dollars, being mostly, if not entirely, the proceeds of the alimony decreed to her in the divorce case, which were either in the hands or under the control of the decedent at the time of his death.

The appellant, having in the mean-time intermarried with one Israel, commenced this suit against the appellees, charging that there was no real cause for a divorce at the time the divorce was granted to the decedent as above set forth; that she was induced to waive any effective defence to the divorce proceedings by assurances that the decedent would soon remarry her, and that a temporary separation was best for their mutual interests; that when she signed the antenuptial agreement before their remarriage, it was only read to her in part, and was signed by her upon representations made by the decedent that the paper was a merely formal thing, and did not amount to anything of any importance; that she, at the time, had no information and no conception as to the real nature of the so-called antenuptial agreement, and that she was only actuated to sign it by reason of the great and undue influence which the decedent had then, as he had long before had, over her; also charging that after the death of the decedent, she, the appellant, had no opportunity of consulting counsel or of obtaining legal advice as to her interests in his estate; that she was induced to join in the deeds of partition and compromise, after the decedent's death, by the false and fraudulent representations of the appellees that she had no interest in the decedent's estate, and by reason of the undue influence which the appellees had acquired over her by kindness to her in her then helpless condition; that she was illiterate, being unable to either read or write, and unaccustomed to transacting business of importance; that as a consequence she had no adequate comprehension of the nature and legal effect of what

she was doing when she signed the alleged antenuptial agree-ment, as well as when she joined in the deeds of partition and compromise. Wherefore the appellant demanded that the ante-nuptial agreement be cancelled; that the deeds of parti-tion and compromise, so far as they purported to convey her interest in the real estate, be set aside; that partition of the real estate might be made, and all other proper relief.

The appellees demurred to the complaint, alleging the sub-stantial insufficiency of the facts, and, their demurrer being overruled, they answered in general denial.

When the cause was called for trial, the court, on its own motion, ordered a jury to be empanelled to try the questions of fraud and undue influence charged by the complaint and denied by the answer.

After the appellant had introduced all her evidence in chief, and the appellees had finished the examination of one wit-ness, the presiding judge announced that the evidence had failed to sustain the material allegations of the complaint, or to make a case for the appellant, and that if the jury should return a verdict for the appellant, he would feel constrained to disregard it and enter a decree for the appellees. The court thereupon, over the objection and exception of the appellant, discharged the jury, and no further evidence being introduced or offered, the court entered a decree dismissing the complaint, and rendered final judgment against the appellant for costs.

The appellant has assigned error upon the order of the cir-cuit court discharging the jury, and seriatim upon each dis-tinct ruling made in the subsequent proceedings.

The appellees have assigned cross error upon the decision of the circuit court overruling their demurrer to the com-plaint.

Counsel for the appellant, while admitting that this was purely an equitable proceeding, and, consequently, a cause which might have been tried by the court without a jury, in-sist, nevertheless, that inasmuch as certain controlling ques-tions of fact, involved in a proper decision of the cause, were

submitted to a jury for their verdict, it was error to discharge the jury before the trial had concluded, upon the assumption that there was a failure of proof on behalf of the plaintiff; in other words, it is claimed that inasmuch as certain material questions of fact had been sent to a jury for trial, the plaintiff became entitled, as a matter of right, to a verdict upon such questions, and that hence the action of the court abridging her right in that respect was an abuse of its discretion, for which the judgment ought to be reversed.

It is enacted by section 409, R. S. 1881, that " Issues of law and issues of fact in causes that, prior to the 18th day of June, 1852, were of exclusive equitable jurisdiction, shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. * * * * * *  Provided, That in all cases triable by the court as above directed, the court, in its discretion, for its information, may cause any question of fact to be tried by a jury, or the court may refer any such cause to a master commissioner, for hearing and report."

This suit being in its legal effect an action for relief against an alleged series of fraudulent practices, would have been, prior to the 18th day of June, 1852, a matter of exclusively equitable jurisdiction. Consequently, whether any of the questions of fact presented in the cause should be sent to a jury for trial rested entirely in the discretion of the circuit court. For the same reason any verdict which the jury might have returned would only have been for the information of the court and not obligatory upon it, in the final disposition of the cause. The court, therefore, in the exercise of a sound discretion, could have disregarded any verdict which the jury might have rendered in the cause. This is the construction which we have several times placed upon the section of the code of 1881, set out as above. *Hendricks* v. *Frank*, 86 Ind. 278; *Lake Erie, etc., R. W. Co.* v. *Griffin*, 92 Ind. 487; *Carmichael* v. *Adams*, 91 Ind. 526; *Pence* v. *Garrison*, *ante*, p. 345.

The obvious inference from what has been decided is that

where a jury has been empanelled in a cause of exclusively equitable jurisdiction to try some question of fact for the information of the court, and there is a failure of proof sufficient to justify the return of a verdict for the plaintiff, the court may discharge the jury without a verdict, and proceed to dispose of the cause as if the jury had not been empanelled.

With this construction of the code of 1881 concerning the trial of exclusively equitable causes in view, the only remaining questions to be considered are, Was the circuit court guilty of any abuse of its discretion in discharging the jury in this case without a verdict, and is the judgment right upon the evidence? The evidence adduced at the trial presented a singular and apparently exceptional condition of affairs in domestic life. There was no evidence introduced tending to explain the causes which led to the separation between the appellant and her late husband, or to make known the grounds upon which the divorce which followed was granted. As the divorce was decreed upon the application of the husband, we are left to the inference that some dereliction of marital duty on the part of the appellant was established to the satisfaction of the court granting the divorce. For the same reason we must infer that the amount of money allowed to the appellant for alimony was, under the circumstances as they were disclosed to the court, a fair provision for her out of the property of the husband. *Rose* v. *Rose, ante,* p. 179. It ought not, therefore to be considered a matter of surprise, either that the husband was unwilling to permit the appellant to acquire an additional interest in or share of his property by a simple resumption of their former marital relation, or that the appellant should have consented to sign such an antenuptial agreement as that read in evidence.

It is a general rule that where a person has signed an instrument in writing without either reading it or hearing it read, or requiring some authorized statement of its contents, he will not, because of his negligence, be relieved from the consequences of any mistake he may have made in the nature

Israel *v.* Jackson *et al.*

or terms of the instrument he has thus signed.    There was nothing in the evidence connected with the execution of the antenuptial agreement by the appellant which made that transaction an exception to this general rule.    Besides, considering the evidence in all its parts, we can not say that it entirely excluded the inference that the appellant had some general idea at least of the character of the instrument she was requested to sign.

At the time the deeds of partition and compromise were executed, an agreement in writing was also executed by all the parties, including the appellant, which specified in detail the terms and conditions upon the adjustment of all controversies concerning the estate in question was made.

It was made to appear by the evidence that these terms and conditions were fully and carefully explained to all the parties jointly assembled, before either one of the deeds, or the agreement, was signed, and that, after the leading features of the proposed adjustment had been especially recapitulated to her, the appellant expressly assented to the terms and conditions as proposed, and united with the other members of the family in the execution of the deeds as well as agreement.

Assuming, as we feel justified in assuming from the evidence, that the appellant was a person of sound mind, and not under coercion or restraint, her participation in the execution of the deeds and agreement operated as a ratification by her of the antenuptial agreement, and amounted to an emphatic relinquishment of all further claim to share in the property of her deceased husband.    If, through illiteracy, or inexperience in business affairs, she really failed to obtain what in equity and good conscience she was entitled to receive, the result to her was a misfortune for which there is nothing in the evidence suggestive of any remedy.

Upon a careful review of the evidence, we are constrained to hold that the circuit court did not err either in discharging the jury without a verdict or in dismissing the complaint and rendering judgment for the appellees.

---

The conclusion we have reached upon the evidence renders it unnecessary for us to consider the cross error assigned by the appellees.

The judgment is affirmed, with costs.

