Brown v. Russell & Co.

———————————◆———————————

No. 12,241.

## BROWN v. RUSSELL & Co.

CONTRACT.—*Merger of Verbal Agreements in Written Contract.— Vendor and Purchaser.— Warranty of Machinery.*—Where the agent of a vendor verbally warrants machinery as a part of the preliminary negotiations for its sale, and a written contract of sale between the parties is subsequently executed, all previous verbal negotiations and agreements are merged.

SAME.—*Notice of Breach of Warranty.—Continued Possession.*—Where it is provided in such contract that written notice of any breach, within "ten days of first use," of warranty shall be given by the vendee to the vendor, and that continued possession or use of the machine after the expiration of the ten days shall be conclusive evidence that the warranty is fulfilled to the satisfaction of the vendee, the failure of the vendee to give

Brown *v.* Russell & Co.

the notice or to deliver possession will defeat a defence to the recovery of purchase-money founded on a breach of warranty.

CHATTEL MORTGAGE.—*Foreclosure.—Equitable Jurisdiction.—Trial by Court.* —A suit to foreclose a chattel mortgage was of exclusive equitable jurisdiction prior to June 18th, 1852, and under section 409, R. S. 1881, the issues of law and fact in such case must be tried by the court.

From the Sullivan Circuit Court.

*J. H. Blake* and *J. W. Shelton,* for appellant.

*G. W. Kleiser, J. H. Kleiser, J. T. Hays* and *H. J. Hays,* for appellee.

HOWK, J.—The appellee, Russell & Co., a corporation of that name, commenced this suit against appellant Brown, in the Vigo Superior Court. The object of the suit was to foreclose a certain chattel mortgage, executed to appellee by the appellant to secure the payment of certain promissory notes also executed by him to appellee, and to collect the debt evidenced by such notes. After the cause was at issue, on appellee's application, the venue thereof was changed to the Sullivan Circuit Court. There the cause was heard by the court, and, at appellant's request, the court made a special finding of the facts and thereon stated its conclusions of law in favor of appellee. Over appellant's exceptions to its conclusions of law, the court rendered its final decree herein, in accordance therewith, against him and in favor of appellee.

In this court appellant Brown has assigned several errors, but of these only one is properly saved in, or presented by, the record of this cause, namely: Error of the court in its conclusions of law upon the facts specially found.

The facts found by the court were, in substance, as follows:

1. In 1882, during the months of June, July, August and September, one J. F. McCandless was the duly appointed agent of appellee to sell its machinery, including steam engines and separators, in Vigo county, Indiana.

2. One —— Myers was agent for appellee in and for the State of Indiana, and had supervision of local agents, and assisted them in the sale of appellee's machinery.

3. In June, 1882, McCandless and Myers negotiated with appellant for the sale to him of a steam engine and separator, and he agreed to pay therefor the sum of $1,625, to be paid as follows: $545 October 1st, 1882, $545 October 1st, 1883, and $535 October 1st, 1884.

4. In such negotiations, the agents aforesaid verbally warranted such machinery to be well made and of good material, and, with proper management, capable of doing as good work as similar articles of other manufacturers.

5. Afterwards, on June 5th, 1882, appellant signed a written and printed order to appellee for such machinery to be shipped to McCandless, in which appellant agreed to receive such machinery, subject to the following conditions: "The above articles are warranted to be of good material, well made, and, with proper management, capable of doing as good work as similar articles of other manufacturers." Such written order contained further stipulations, to wit: "If said machinery, or any part thereof, shall fail to fill this warranty within ten days of first use, written notice shall be given Russell & Co., Massillon, Ohio, and to the party through whom the machinery was purchased, stating wherein it fails to fill the warranty, and time, opportunity and friendly assistance given to reach the machine and remedy any defects." It is further provided in said order as follows: "If the defective machinery can not then be made to fill the warranty, it shall be returned to the place where received, and another furnished on the same terms of warranty, or money and notes returned to the amount represented by the defective machinery, and no further claim be made on Russell & Co." Such order contained the further stipulation, to wit: "Continued possession or use of the machine, after the expiration of the time named above, shall be conclusive evidence that the warranty is fulfilled to the satisfaction of the purchasers, who agree to thereafter make no other claim on Russell & Co., under the warranty. All warranties to be invalid and void

in case the machine is not settled for when delivered, or if the warranty is changed by erasure, addition or waiver."

Such was the substance of the conditions in said order. Preceding the date and at the top of such order, is printed the following: "This order taken subject to the acceptance of Russell & Co. Purchasers will note, that no promises made by any person, whether agent, employee or attorney, will be considered binding unless made in writing and ratified by home or branch office." Appellant Brown signed such order without reading the same, or having it read over to him, but was informed that the warranty of the machinery would be the same as that which had been stated in the verbal negotiations.

6. The order was handed to Myers, the general agent for the State, and was by him forwarded to the branch office of Russell & Co., at Indianapolis, and by it accepted and acted upon.

7. Pursuant to such order, the machine in complaint mentioned was delivered to appellant Brown at the public square in the city of Terre Haute, on the 8th day of July, 1882, and appellant executed to Russell & Co. his four promissory notes, one for $250, due September 1st, 1882, one for $325, due October 1st, 1882, one for $545, due October 1st, 1883, and one for $535, due October 1st, 1884, all drawing eight per cent. interest, payable annually until paid, without relief, and attorneys' fees, and to secure such notes appellant executed a chattel mortgage on said machinery. Such mortgage was duly recorded, and the consideration for the notes and mortgage was the sale of such machinery to appellant.

8. Such machinery was tested by appellant on the 9th day of July, 1882, and failed to do good work. He verbally notified appellee's agent on the same day, and Myers attempted to make the machinery do good work, but did not succeed.

9. Appellant attempted further to make the machinery do good work, until July 14th, 1882, at which time he notified

McCandless, and then offered to return the machinery to him in the city of Terre Haute, and was informed by McCandless that he could not receive it, because he had no room for it, and he requested appellant to keep it until he could see further about it.

10. Appellant did retain the machine and attempted to use it, until in September, 1882, since which time it has been in his possession, but has not been used, nor has there been any attempt to use it.

11. Such machinery is not well made nor of good material, nor is it under proper management capable of doing as good work as similar articles of other manufacturers.

12. As a thresher and separator, such machine has no value, but, as property, it has a market value, the amount of which the court is unable to determine from the evidence.

13. Appellant purchased such machinery for a thresher and separator, as appellee knew at the time of the sale.

14. Appellant has not, in point of fact, converted any portion of such machinery to any other use or purpose, and does not retain the same, nor any portion thereof, with any such intention.

15. Such machinery was properly managed in attempting to use it.

16. Such machinery was not well made, in this: The engine was not in line, and was so constructed that it would not generate steam enough to afford proper power. The separator would not take the wheat from the straw, and would choke up and stop when heavily fed, and, when fed otherwise, would break and crack the wheat, and, with proper management, would not thresh more than two hundred and fifty or three hundred bushels of wheat per day, and the expenses exceeded the earnings.

17. Similar articles of other manufacturers, with proper management, would thresh of wheat from one thousand to one thousand two hundred bushels per day.

18. Agents McCandless and Myers were instructed by ap-

Brown v. Russell & Co.

pellee to make no verbal warranties, but appellant had in. fact no knowledge of such instructions.

19. The verbal warranty was made by McCandless and. Myers, and is, in substance, the same as that named in the written and printed order, upon which appellee delivered to appellant the machinery mentioned in the complaint.

20. Appellee received, accepted and retained the notes and mortgage given by appellant and sued on, without any knowledge of the fact that such agents had made a verbal warranty to appellant. At no time did appellee make out and sign a duplicate order, as was its custom, and deliver the same to appellant, neither did its agents do so for it, nor any other writing containing such warranty.

21. Appellee is a corporation, duly organized under the laws of the State of Ohio.

22. The notes sued on, due at commencement of the suit, amount to $633.10.

23. One hundred dollars is a reasonable attorney's fee for collecting the amount of such notes and foreclosing a chattel mortgage to secure the same.

Upon the foregoing facts, the court stated, as its conclusion of law, that appellee was entitled to judgment for the amount found due on the notes, and to a decree for the foreclosure of the mortgage in suit and for the sale of the mortgaged chattels, etc.

In their brief of this cause, appellant's learned counsel, in speaking of the court's conclusion of law, say: "This, it seems to us, is as clear a case of *non sequitur* as could well be imagined." They then proceed to show, from the court's finding of facts, that appellant purchased of Russell & Co. the machinery which constituted the sole consideration of the notes and mortgage sued upon herein under the warranty, verbal and written, of Russell & Co., that such machinery was "of good material, well made, and, with proper management, capable of doing as good work as similar articles of other manufacturers." They further show from the facts

found by the court, that the warranty of Russell & Co., of the machinery purchased by appellant, from the date of its delivery to him down to the final hearing of this cause, had been and was broken in every material particular; that such machinery was not of good material, was not well made, and, with proper management, was not capable of doing as good work as similar articles of other manufacturers. Finally, counsel show from the findings of the court, that the machinery was of no value whatever as a "thresher and separator," for which purpose it was sold and warranted by Russell & Co., and with its knowledge was purchased by appellant.

Upon the foregoing facts, it is vigorously insisted by appellant's counsel, that by reason of the breaches of the warranty of Russell & Co., there was such an absolute and total failure of the only consideration for the notes and mortgage in suit that the court ought to have found thereon for the appellant, as its conclusions of law. There would be some foundation for this claim of appellant's counsel if the court had found as a fact that the warranty of Russell & Co., upon which appellant predicated his defence herein, was absolute, unconditional and unlimited in its terms. Of course, it was competent for the parties to contract with each other in relation to the extent, terms and conditions of the warranty, and to impose such limitations and restrictions thereon as they might mutually agree upon. It is claimed by appellant, and the court found, that Russell & Co. made first a verbal warranty and afterwards a written warranty of the machinery sold to and purchased by appellant. There were two findings of the court in relation to the verbal warranty, and it is upon this verbal warranty that appellant's counsel chiefly, if not wholly, rely for the reversal of the judgment. The court found first, that appellee's agents, McCandless and Myers, in their negotiations with appellant for the sale to him of the machinery, verbally warranted such machinery to be well made and of good material, and, with proper man-

agement, capable of doing as good work as similar articles of other manufacturers. Afterwards the court seems to have concluded that its finding, in regard to the verbal warranty, was not sufficiently full or explicit, and made the further finding that the verbal warranty was made by McCandless and Myers, and was, in substance, the same as that named in the written and printed order, upon which appellee delivered to appellant the machinery mentioned in the complaint.

Appellant's counsel claim, in argument, that in considering this case, with reference to the verbal warranty, we ought to disregard this further finding of the court, but this we could not do. There is no conflict between the two findings of the court in relation to the verbal warranty, and the second might properly be regarded as the supplement merely of the first finding. If we had found it necessary to consider the verbal warranty, in the decision of this case, we would hold that the two findings of the court ought to be construed together, and, thus construed, it would appear that the verbal warranty was subject to the same conditions, limitations and restrictions as the written warranty. But it appears, from the findings of the court, that the verbal warranty was a part of the preliminary negotiations between appellee's agents and appellant for the sale to and purchase by him of the machinery mentioned in the complaint. These negotiations were afterwards consummated by appellant's execution of the written and printed order, mentioned in the court's special finding of facts, and the appellee's acceptance of and action upon such order. Thereafter, such written and printed order became the mutual, valid and binding contract of both appellee and appellant, in relation to the machinery mentioned therein. This is settled by our decisions. *Fairbanks* v. *Meyers*, 98 Ind. 92; *Herrman* v. *Babcock*, 103 Ind. 461; *Chicago, etc., R. W. Co.* v. *Derkes*, 103 Ind. 520. When this written and printed contract was thus executed, all verbal negotiations or agreements, by or between the parties, which preceded or accompanied its execution, were merged therein,

and such contract became and was the exclusive evidence of the only covenants and agreements, in relation to the machinery described therein, by which the parties ultimately bound themselves. *Ice* v. *Ball*, 102 Ind. 42.

In such written and printed contract, the appellee's warranty of the machinery was expressly limited to the period of "ten days of first use," and it was expressly stipulated that if the machinery, or any part thereof, should fail to fill the warranty within that period of time, written notice of such failure should be given the appellee, at Massillon, Ohio, and to the agent through whom the machinery was purchased. The court found that the machinery failed to fill the warranty, on the first day of its use, but did not find that written notice of such failure had ever been given the appellee or to its agent. It was further stipulated in such contract, that continued possession or use of the machine, after the expiration of the ten days, should be conclusive evidence that the warranty was fulfilled to the satisfaction of the appellant. The court found the facts to be, that appellant had continued in the use of the machine for a period of two months, and had continued in the possession of the machine down to the date of the final hearing of this cause. Of course, upon such facts as these, the trial court was compelled to find, as its conclusion of law, that appellee must recover the amount due on his notes and mortgage. The fact found by the court, that appellant executed such contract without reading it or having it read to him, only shows inexcusable negligence on his part, and does not aid his defence.

We are clearly of the opinion that, upon the facts specially found, the court did not err in its conclusions of law.

Appellant's counsel also insist that the trial court erred in refusing to submit the issues in this cause to a jury. We do not think this alleged error is properly before us, as neither appellant's motion for a trial by jury, nor the ruling of the court thereon, were made parts of the record either by bill of exceptions or by an order of court. But if the question was

properly presented here, we would hold that there was no error in the court's refusal of a jury trial. The case is one that, prior to the 18th day of June, 1852, was of exclusive equitable jurisdiction, and, under section 409, R. S. 1881, the issues of law and issues of fact in such a case must be tried by the court. *Carmichael* v. *Adams,* 91 Ind. 526; *Lake Erie, etc., R. W. Co.* v. *Griffin,* 92 Ind. 487; *Israel* v. *Jackson,* 93 Ind. 543; *Lake* v. *Lake,* 99 Ind. 339.

We have found no error in the record of this cause.

The judgment is affirmed, with costs.

