Stephen A. SONGER and Country Concrete, Inc., Appellants (Defendants),

v.

CIVITAS BANK f/k/a Citizens Bank of Western Indiana, Appellee (Plaintiff).

No. 23S01–0207–CV–360.

Supreme Court of Indiana.

July 2, 2002.

John G. Forbes, Bruce A. Kotzan, Julie Z. Schmitt, Maggie L. Smith, Sommer & Barnard, PC, Indianapolis, IN, Attorneys for Appellants.

L.R. Wheatley, Danville, IN, Attorney for Appellee.

Jonathan R. West, Indianapolis, IN, Attorney for Amicus Curiae Federal Home Loan Bank of Indianapolis.

Theodore J. Nowacki, Bryan H. Babb, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Amicus Curiae Indiana Bankers Association, Inc.

SHEPARD, Chief Justice.

Recent practice and case law has inclined toward denying a request for trial by jury whenever a complaint joins claims in law and equity on the theory that any claim in equity "draws the whole lawsuit into equity." We think this narrows the right to trial by jury as guaranteed by the Indiana Constitution.

### Facts and Procedural History

Appellant Stephen A. Songer is chairman of the board and chief executive officer of CentreBank of Veedersburg (CentreBank). He and his wife Jahn own about one-third of CentreBank's stock. Songer and Jahn also serve as directors and sole shareholders of Country Concrete, Inc. (CCI).

In late 1996, CentreBank made a loan of just over a million dollars, its largest outstanding loan at the time, to Battleground Hybrids, Inc. (BHI). In 1997, BHI's sister company, Prairie Production, Inc. (PPI), sought additional financing.[1] BHI's ability to repay CentreBank's initial loan depended on PPI's financial health.

In April 1997, representatives of CentreBank, Civitas Bank, and PPI met to discuss the possibility of Songer investing in PPI. Songer agreed to provide financial assistance to PPI though proceeds provided by Civitas. For the purpose of investing in PPI, Songer personally executed two promissory notes in which he promised to pay Civitas approximately $500,000 plus interest. Songer also granted Civitas a lien on his shares of CentreBank, executed an irrevocable stock power and delivered the stock certificates to Civitas. Furthermore, Songer granted Civitas a mortgage on real property owned by CCI and assigned rental income from it.

Civitas deposited the loans' proceeds, in the form of two cashiers' checks, into PPI's checking account. The cashiers' checks were made payable to Songer but were never endorsed by him. Songer made only one payment on the promissory notes and subsequently defaulted.

■ Civitas filed suit against Songer and CCI. The complaint listed two counts, one styled "Complaint on Note" and the other "Replevin."[2] In count one, Civitas

---

1. The two companies were both operated by Stephen Ratcliff. (R. at 331–32, 550–51.)

2. While Civitas styled count two as "Replevin," this is clearly the wrong label. Replevin is an "action for the repossession of personal property wrongfully taken or detained by the defendant." Black's Law Dictionary 1302 (7th ed.1999). Civitas could not have been seeking replevin because it already had pos-

sought to collect the principal on the notes, accrued interest, costs and attorneys' fees. In count two, it sought an order "authorizing [Civitas] to liquidate the collateral granted to it by Stephen A. Songer, a determination of lien priority in said collateral if required, an extinguishment of rights of all parties claiming an interest in the collateral and for all other relief just and proper under the premises." (R. at 13.)

In their answer, Songer and CCI asserted six affirmative defenses: (1) lack of consideration, (2) conversion, (3) forgery, (4) estoppel, (5) fraud, and (6) lack of holder-in-due-course status. They requested a jury trial on the entire subject matter of Civitas' complaint. The trial court denied the request.

After a bench trial, the court awarded judgment to Civitas on the promissory notes plus interest and attorneys' fees. It also ordered foreclosure of the mortgages and liens Songer had given Civitas as security.

Songer and his company appealed, arguing that their right to a jury trial was violated, that a notice of foreclosure action was not given, that the right of redemption was violated, that Civitas improperly distributed the money from the promissory notes, and that the evidence did not support the trial court's conclusions of law. The Court of Appeals found that CCI was entitled to a three-month redemption period before execution of foreclosure, but found for Civitas on all other issues. *Songer v. Civitas Bank*, No. 23A01–0004–CV–132, slip op. at 15, 741 N.E.2d 804 (Ind.Ct. App. Jan. 11, 2001). We grant transfer.

## I. Indiana's Guarantee of Trial by Jury

Article I, section 20 of the Indiana Constitution reads, "In all civil cases, the right of trial by jury shall remain inviolate." The right to a jury trial holds a special place in the system of justice, and we guard it against encroachment.

 That said, it has long been agreed that Article I, section 20 serves to preserve the right to a jury trial only as it existed at common law. *See City of Crown Point v. Newcomer*, 204 Ind. 589, 595, 185 N.E. 440, 443 (1933) (citing *Wright v. Fultz*, 138 Ind. 594, 38 N.E. 175 (1894); *Allen v. Anderson*, 57 Ind. 388 (1877)). Drawing as we do from English common law roots and England's symbiotic system of law courts and equity courts, it is a well-settled tenet that a party is not entitled to a jury trial on equitable claims. *Dean v. State ex rel. Bd. of Med. Registration & Examination*, 233 Ind. 25, 116 N.E.2d 503 (1954); *W.A. Flint Co. v. John V. Farwell Co.*, 192 Ind. 439, 134 N.E. 664 (1922). This principle is embodied in Ind. Trial Rule 38(A):

> (A) *Causes triable by court and by jury.* Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial

session of the stock certificates. It is a well-settled rule that in determining whether a claim is legal or equitable, "Indiana courts look beyond the label given a particular ac-tion and evaluate the nature of the underlying substantive claim." *Weisman v. Hopf–Himsel, Inc.*, 535 N.E.2d 1222, 1228 (Ind.Ct.App. 1989).

of both may be at the same time or at different times, as the court may direct.

## II. The History of Joining Law and Equity Claims

Trial Rule 38(A) is thus necessarily the starting point. The policy described by Rule 38(A) has existed in substantially the same form for over 120 years, commencing as a legislative enactment. *See* Rev. St. 1894, § 412; Rev. St. 1881, § 409 (nearly identical statutory forerunners of Trial Rule 38(A)). This legislative enactment and the later judicial rule have informed the historic understanding of the Constitution's meaning on the subject.

Rule 38(A) and its statutory predecessors generally set out three principles. First, suits for which jurisdiction was exclusively equitable prior to June 18, 1852, are to be tried by the court. Second, issues of fact in all other suits are to be tried "as the same are now triable." T.R. 38(A). Finally, when both equitable and legal causes of action or defenses are joined in a single case, the equitable causes of action or defenses are to be tried by the court while the legal causes of action or defenses are to be tried by a jury. *Id.*

One of the earliest decisions on joinder of legal and equitable causes of action was *Carmichael v. Adams*, 91 Ind. 526, 1883 WL 5718 (1883), involving a mortgage foreclosure. The Court ruled that the defendant was not entitled to a jury trial on the amount of the note due. *Id.* at 528. In reasoning remarkably applicable to the case at hand, the Court stated:

> There could, in such a case as this—a suit upon a note and mortgage—be no decree without an ascertainment of the amount due on the note, and, therefore,

the whole matter was necessarily for the decision of the court. In order to determine whether the plaintiff was entitled to the relief sought, it was absolutely necessary to ascertain that there was a debt secured by the mortgage, for, if there was no debt, there was nothing upon which the power of the court could be exercised. It was not possible to make a step of progress in the decree without settling the question of the defendants' indebtedness.

*Id.* at 527. *See also Evans v. Nealis*, 87 Ind. 262, 263, 266–67 (1882) (in action to encumber specific property with judgment lien, a jury trial was proper only if verdict was advisory).

In *Hendricks v. Frank*, 86 Ind. 278, 1882 WL 6464 (1882), a debtor conveyed his only unencumbered property to avoid payment to his creditors, and the creditors filed suit to rescind the conveyance. *Id.* at 279–80. The case was tried before a jury, to which a creditor objected. *Id.* at 282. This Court concluded that a jury trial was improper, endorsing the opinion of Supreme Court Commissioner John Morris,[3] who wrote, "Upon the general subject of fraud courts of equity have concurrent jurisdiction with courts of law; but in a cause or suit to rescind a contract for fraud, [courts of equity] had, in June, 1852, exclusive jurisdiction." *Id.* at 283.

Soon after *Hendricks*, we decided *Brown v. Russell*, 105 Ind. 46, 4 N.E. 428 (1886). There, Russell sought (1) to foreclose a chattel mortgage which secured certain promissory notes and (2) to collect the debt evidenced by the promissory notes. 105 Ind. at 47, 4 N.E. at 429. The trial was before the bench, and Brown appealed. The Court held "that there was

---

**3.** In 1881, the legislature created five Commissioners, one to be appointed by each of the five members of the Supreme Court. Act 1881, Ch. XVII, p. 92. The Commissioners prepared opinions for consideration by the Court.

no error in the [trial] court's refusal of a jury trial." 105 Ind. at 55, 4 N.E. at 433 (citations omitted).[4]

In *Towns v. Smith*, 115 Ind. 480, 16 N.E. 811 (1888), this Court considered another case instructive to the issue now before us. The suit involved an action on a promissory note and an action to set aside an allegedly fraudulent conveyance made for the purpose of avoiding the debt. 115 Ind. at 481, 16 N.E. at 812. The Court held:

> One feature of the case, it is true, was an action on a promissory note, and the relief demanded was merely of a pecuniary character. To that extent the proceeding resembles an ordinary action at law. In order to obtain final and more effectual relief, however, the suit combined a proceeding in the nature of a creditors' bill to set aside and cancel a fraudulent conveyance, which belongs exclusively to the procedure and jurisdiction of chancery.

115 Ind. at 481, 16 N.E. at 812.

After *Towns* came *Albrecht v. C.C. Foster Lumber Co.*, 126 Ind. 318, 26 N.E. 157 (1890), in which Foster Lumber sought to enforce a lien against Albrecht's property. In response, Albrecht asserted that Foster Lumber's notice of foreclosure was deficient and requested a jury trial. 126 Ind. at 319–20, 26 N.E. at 157. The trial court denied the request, and Albrecht appealed. This Court affirmed, holding that only a court of equity can foreclose mechanics'

liens and liens on real property. 126 Ind. at 320, 26 N.E. at 157 (citations omitted).

If the case history stopped here, our decision today would be relatively simple. We would hold that Songer and CCI had no right to a jury trial. Unfortunately, subsequent decisions and changes in the pleading system have muddied the waters significantly.

Six years after *Albrecht*, this Court considered a similar issue. In *Field v. Brown*, 146 Ind. 293, 45 N.E. 464 (1896), Field filed a three-count complaint. The first sought recovery for money, the second sought an accounting, and the third alleged fraud in settlement agreements. 146 Ind. at 294, 45 N.E. at 464. Field requested a jury trial but was denied. The Court concluded that while the last two counts stated equitable claims, the first count was triable at law by a jury. 146 Ind. at 294, 45 N.E. at 464. Relying on a statute that is now Trial Rule 38(A), the Court held that the two equitable claims did not necessarily draw the third cause of action into equity. 146 Ind. at 295–96, 45 N.E. at 464–65; *see also Abernathy v. Allen*, 132 Ind. 84, 31 N.E. 534 (1892) (in suit to set aside two conveyances and order partition, defendants were entitled to jury trial on issue of partition).

Nevertheless, the *Field* Court reaffirmed that "where equity takes jurisdiction of the essential features of a cause, it will determine *the whole controversy*, though there may be incidental questions of a legal nature."[5] 146 Ind. at 295, 45 N.E. at

---

**4.** *See also Jones v. Marengo State Bank*, 526 N.E.2d 709, 713 (Ind.Ct.App.1988) ("An action to foreclose a security interest is essentially equitable.").

**5.** *Cf. McCoy v. Oldham*, 1 Ind.App. 372, 376–77, 27 N.E. 647, 649 (1891) ("In determining what suits are triable by jury the court must look to *the character of the questions to be decided*, and, if they are essentially of an equitable nature, or if some essentially equitable

remedy is invoked, as contradistinguished from legal questions and remedies, the cases should be tried by the court; otherwise the parties will be entitled to a jury.") (emphasis added) (citing *Martin v. Martin*, 118 Ind. 227, 20 N.E. 763 (1889)).

A somewhat different test was set out in *Robertson v. McPherson*, 4 Ind.App. 595, 597, 31 N.E. 478, 478 (1892) (citations omitted), where the court stated, "The question wheth-

464 (emphasis added). The Court cautioned, however, that "none of [our past holdings] can be construed as holding that numerous causes of action, stated in various paragraphs of complaint, may not be severed, and those of an equitable nature tried by the court, and those of a legal character tried by a jury." 146 Ind. at 295, 45 N.E. at 465.

From this correct statement of law, Songer and CCI try to prove too much. They argue that the Court's statement that "where equity takes jurisdiction of the essential features of a cause, it will determine the whole controversy" is limited to one-count complaints. (*See* Appellants' Resp. to Amici at 4.) We disagree. As the U.S. Supreme Court said in *Ex parte Milligan*, 71 U.S. (4 Wall.) 2, 112, 18 L.Ed. 281 (1866), the terms "cause" and "suit" are interchangeable. The same is not necessarily true for "cause" and "cause of action." [6] A "cause," as noted, is a lawsuit. As illustration, lawsuits are assigned "cause numbers" to track their progress through trial and appeal.

On the other hand, a "cause of action" is a legal theory of a lawsuit. *See* Black's Law Dictionary 213, 214 (7th ed.1999). Several "causes of action" can potentially be encompassed within a single "cause." Thus, a single "cause" might consist of a contract "cause of action" and a tort "cause of action."

As such, *Field*'s holding is that where the essential features of a suit sound in equity, the entire controversy is drawn into equity, including incidental questions of a legal nature.

The inverse must also be true. Where equity does not take jurisdiction of the essential features of a cause, a multi-count complaint may be severed, and different issues may be tried before either a jury or the court at the same proceeding. This is consistent with the language and spirit of Rule 38(A).

The subsequent case of *Sweigart v. State*, 213 Ind. 157, 12 N.E.2d 134 (1938), supports this conclusion. In *Sweigart*, the State brought suit against Sweigart, Clerk of the Lake Circuit Court, seeking penalties for unlawful issuance of marriage licenses and a temporary and final injunction. 213 Ind. at 159, 12 N.E.2d at 136. The trial court issued the injunction, and a jury trial was held on the penalties. 213 Ind. at 160, 12 N.E.2d at 136. Sweigart appealed and alleged that he was entitled to a jury trial on the injunction as well. The Court held:

> The equitable relief prayed for in the complaint was *separate and apart* from the legal relief sought and was properly an issue for the court to try.... The fact that the plaintiff joins legal and equitable causes of action in a complaint does not deprive a defendant of the right

---

er or not the cause is one in which a jury may be demanded depends upon the jurisdiction invoked. If the remedy sought be equitable the court cannot be required to call a jury. If it be legal the trial is by jury, unless a jury be waived."

**6.** This conclusion is buttressed by the wording of Trial Rule 38(A) itself. The first part of Rule 38(A) refers to *"causes* that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction." T.R. 38(A) (emphasis added). Further on, the rule discusses "joinder of *causes of action* or defenses,

which prior to said date, were of exclusive equitable jurisdiction." *Id.* (emphasis added). "Causes" and "causes of action" cannot be read as interchangeable terms. The holding in *Field* is not "where equity takes jurisdiction of the essential features of a cause of action, it takes jurisdiction over the entire suit." Rather, the better understanding of the *Field* Court's holding is that "where equity takes jurisdiction of the essential features of a suit, the entire proceeding is drawn into equity" though there may be incidental questions of a legal nature.

to a trial by jury on the purely legal issues.

213 Ind. at 162–63, 12 N.E.2d at 137 (emphasis added).

 *Sweigart* and *Field* can therefore be read together and harmonized with past decisions. Where the essential features of a suit sound in equity, such that the equitable relief asked for is not separate and apart from the legal relief sought, the entire action is drawn into equity. And in the prior decisions from *Carmichael* to *Albrecht,* the Court adjudged the controversies as having essentially equitable features.[7]

### III. Modern Detours

Modern decisions on this topic reflect the difficulty of parsing through the issue. A fair amount of case law, including some of our own, demonstrates the risks of a shorthand, imprecise recitation of the rule. *See, e.g., Fager v. Hundt,* 610 N.E.2d 246, 253 n. 5 (Ind.1993) ("Despite the long-standing rule that whenever a cause of action is in equity the entire action is drawn into equity, thus extinguishing the right to a jury trial, the converse is also true.").

An overview of recent appellate decisions reveals continuing disagreement and a multitude of tests used for determining a litigant's right to jury trial. We accepted transfer to restate the basic principles.

Much of this modern inconsistency can be traced to misuse of *Hiatt v. Yergin,* 152 Ind.App. 497, 284 N.E.2d 834 (1972), *overruled on other grounds, Erdman v. White,* 411 N.E.2d 653, 656 (Ind.Ct.App.1980).

While much of the prior case law involved interpretation of the statutory guarantee, *Hiatt* was the first case to consider Trial Rule 38(A) as it was adopted in 1970. 152 Ind.App. at 512, 284 N.E.2d at 842. The case involved a breach of contract claim which sought specific performance of the agreement. 152 Ind.App. at 526, 284 N.E.2d at 850. Appellants' request for a jury trial had been denied.

The Court of Appeals examined several prior decisions, much as we have done today. It cited both *Towns,* 115 Ind. at 480, 16 N.E. at 811, and *Hendricks,* 86 Ind. at 278, for the proposition that "if any essential part of a cause [i.e., suit] is exclusively of equitable cognizance, the whole is drawn into equity." *Hiatt,* 152 Ind.App. at 517, 284 N.E.2d at 845.

After a thoughtful analysis, the court held that "[t]o determine if an action with mixed issues of fact sounds in equity or law, the court must turn to the complaint and pleadings as a whole." 152 Ind.App. at 518, 284 N.E.2d at 846 (citing *Monnett v. Turpie,* 132 Ind. 482, 32 N.E. 328 (1892)). The court concluded by saying that the "right to trial by jury is determined by reference to the essential character and nature of the claim for relief sought." 152 Ind.App. at 525, 284 N.E.2d at 850.

Unfortunately, later decisions misconstrued *Hiatt'*s holding, prying it loose from the rule of *Towns, Hendricks,* and *Field.* For instance, in *Jones v. Marengo State Bank,* the court cited *Hiatt* for the proposition that "if an essential part of a *cause of action* is equitable the rest of the case is

---

7. *See, e.g., Carmichael,* 91 Ind. at 527 ("Where questions are *so closely blended and so firmly interlaced* as in a suit upon a note and mortgage, there can be no severance and no separate trials. One trial, or, to speak more accurately, one hearing, ends the whole controversy.") (emphasis added). Some subsequent Court of Appeals decisions have properly applied the rule as well. *See Lewandowski v. Beverly,* 420 N.E.2d 1278, 1282 (Ind.Ct. App.1981) ("[T]he legal and equitable issues were 'so closely blended and so firmly interlaced' that there could be no severance.") (quoting trial court determination).

drawn into equity." 526 N.E.2d at 713 (emphasis added). Like the appellants in this case, the court failed to recognize the distinction between a "cause" and a "cause of action." Some subsequent decisions have done likewise. *See, e.g., Baker v. R & R Const., Inc.,* 662 N.E.2d 661, 665 (Ind.Ct.App.1996); *Levinson v. Citizens Nat'l Bank of Evansville,* 644 N.E.2d 1264, 1267 (Ind.Ct.App.1994); *Weisman v. Hopf–Himsel, Inc.,* 535 N.E.2d at 1229. As we said above, the two are not interchangeable.

■ If the essential features of a suit as a whole are equitable and the individual causes of action are not distinct or severable, the entitlement to a jury trial is extinguished. The opposite is also true. If a single cause of action in a multi-count complaint is plainly equitable and the other causes of action assert purely legal claims that are sufficiently distinct and severable, Trial Rule 38(A) requires a jury trial on the legal claims.

A review of Rule 38(A) and more than 120 years of decisions reveals that Songer is correct in arguing that the simple inclusion of an equitable claim, standing alone, does not warrant drawing an entire case into equity. Such an approach violates Rule 38(A), and we disapprove cases holding otherwise. Something more than the mere presence of an equitable claim is necessary.[8]

■ The appropriate question is whether the essential features of the suit are equitable. To determine if equity takes jurisdiction of the essential features of a suit, we evaluate the nature of the underlying substantive claim and look beyond both the label a party affixes to the action and the subsidiary issues that may arise within such claims. Courts must look to the substance and central character of the complaint, the rights and interests involved, and the relief demanded. In the appropriate case, the issues arising out of discovery may also be important.[9]

## IV. The Current Dispute

■ With this framework in mind, we move to the current controversy and de-

8. Saying this, we also recognize that this position is not without support in the law. For instance, Professor Pomeroy stated:

> Where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law.

1 Pomeroy, Equity Jurisprudence, § 231, at 410 (5th ed.1941) (footnote omitted), *quoted in Kruse, Kruse & Miklosko, Inc. v. Beedy,* 170 Ind.App. 373, 417, 353 N.E.2d 514, 541 (1976).

9. Examination of the pleadings alone will likely not end the inquiry. The Supreme Court decisions we discussed earlier were all decided under the rigid requirements of code pleading. The current system of notice pleading requires only a short, plain statement of the claim showing that the pleader is entitled to relief and a demand for such relief. *See* T.R. 8(A). Although notice pleading has significantly eased the litigant's initial pleading burden, it has also made our decision-making process more difficult regarding equitable and legal claims. As the *Hiatt* court discussed:

> [A]scertainment of the theory of a complaint or other pleading to determine if the right to a jury trial exists is hampered. Particularly where little or no discovery has been availed of by the parties, the effect of modern pleading may often be to obscure the theory of a pleading when a jury trial is demanded. At least for the purpose of demanding a jury trial, a pleader should bear in mind the traditional distinction between law and equity. We say this recognizing that the pleadings no longer necessarily serve the function of formulating issues, having in large part been replaced by discovery procedure.

152 Ind.App. at 516–17, 284 N.E.2d at 845.

cide whether Songer and CCI were entitled to a jury trial.

The crux of Songer's argument is that Civitas' desire to foreclose the lien was only "incidental" to its primary goal of "recover[ing] a monetary judgment against Appellants for the collection of certain promissory notes." (Appellants' Trans. Pet. at 7.) While we agree that Civitas' core objective was to regain the funds it lent, this was not through a money judgment. The purpose of count one was to establish the amount Civitas was entitled to collect out of the collateral it possessed, including interest and attorneys' fees. *See Carmichael,* 91 Ind. at 527 ("In order to determine whether the plaintiff was entitled to the relief sought, it was absolutely necessary to ascertain that there was a debt secured by the mortgage.").

In the instant case, Civitas lent Songer $500,000 secured by CentreBank stock and real property owned by CCI. It was not a judgment lien Civitas sought, but rather court authorization to liquidate the collateral it held. It would be nonsensical for Civitas to ask for a $500,000 money judgment and then be forced to seek attachment of its judgment lien to unencumbered property when it already possessed properly attached collateral.

Instead, the essence of the claim was for a judicial pronouncement that Civitas' possessory lien was perfected and that the collateral could be liquidated. At its heart, this was a suit to foreclose a lien on property.

As we observed above, the vast weight of authority holds that foreclosure actions are essentially equitable. *See, e.g., Skendzel v. Marshall,* 261 Ind. 226, 240, 301 N.E.2d 641, 650 (1973) (foreclosure "denotes an equitable proceeding for the enforcement of a lien against property in satisfaction of a debt") (quoting 55 Am. Jur.2d *Mortgages* § 549 (1971)).[10] And being essentially equitable, the whole of the claim is drawn into equity, including related legal claims and counterclaims.

Appellants additionally argue that denying them a jury trial was unjust because Civitas could have liquidated the collateral without a judicial pronouncement. (Appellants' Trans. Pet. at 6.)

The provisions of former Article 9 govern this transaction and provide secured parties with options in enforcing their security interests. First, Ind.Code Ann. § 26–1–9–501 (West 1995) states that a secured party "may reduce his claim to judgment, foreclosure, or otherwise enforce the security interest by any available judicial procedure." Alternatively, Ind. Code Ann. § 26–1–9–504 (West 1995) allows "[a] secured party after default [to] sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing."

Before acting without judicial intervention, though, a secured party must assure that the security interest has attached and is enforceable against the debtor. Ind. Code Ann. § 26–1–9–203 (West 1995). Attachment generally occurs when (1) a debtor signs a security agreement describing

---

**10.** *See also Puterbaugh v. Puterbaugh,* 131 Ind. 288, 298, 30 N.E. 519, 521 (1892) ("[W]here the purpose of the action is primarily to establish an equitable right to acquire a legal title to the land through such right by a decree of the court, as by a specific enforcement of an agreement ... the case is of equitable cognizance.") (quoting *Spencer v.*

*Robbins,* 106 Ind. 580, 5 N.E. 726 (1886)); *Reichert v. Krass,* 13 Ind.App. 348, 351–52, 40 N.E. 706, 707 (1895) (holding that in an action to foreclose a mechanic's lien, a defendant's legal counterclaim stemming from the same transaction is drawn into equity) (citations omitted).

the collateral, (2) value is given, and (3) the debtor retains rights in the collateral. *Id.* Given the highly contested nature of this case, including Songer's claim that value was not given for the security interest, (*see* Appellant's Br. at 22), Civitas did well to seek a judicial pronouncement before enforcing their security agreement.

Civitas' decision to seek court approval through foreclosure rather than run the risks associated with liquidation did not alter the nature of the lawsuit. As the Court of Appeals stated, "[O]nce [Civitas] sought to reduce this claim to judgment, the cause of action depended on the equity jurisdiction of the trial court." *Songer,* slip op. at 8–9.

## V. The Court of Appeals Was Otherwise Correct

As for the other issues Songer and CCI raised before the Court of Appeals, we summarily affirm that court's decision. Ind. Appellate Rule 58(A)(2). While CCI was entitled to a three-month period of redemption, Appellants waived the issues of notice of mortgage foreclosure and statute of frauds by failing to raise these issues at trial, and the trial court's conclusions of fact and law were supported by the evidence.

## Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.