Mary Beth LUCAS and Perry Lucas, Appellants–Defendants,

v.

U.S. BANK, N.A., As Trustee for The C–Bass Mortgage Loan Asset–Backed Certificates, Series, 2006–MH–1, Appellee–Plaintiff,

and

Litton Loan Servicing, LP, Appellee–Third–Party Defendant.

No. 28A01–0910–CV–482.

Court of Appeals of Indiana.

Aug. 11, 2010.

Christine M. Jackson, Chris Jackson Law LLC, Indianapolis, IN, Attorney for Appellants.

Craig D. Doyle, Mark R. Galliher, Amanda J. Maxwell, Doyle Legal Corporation PC, Indianapolis, IN, Attorneys for Appellee U.S. Bank.

## OPINION

BAKER, Chief Judge.

In April 2005, Mary Beth and Perry Lucas (the Lucases) entered into a consumer mortgage loan transaction (the Loan) with Argent Mortgage Company, LLC, (Argent). An escrow account was established from which the hazard insurance and property taxes were to be paid.

Unfortunately, less than four months after the Lucases closed on the Loan, disputes began to occur between the Lucases and the loan servicer regarding the escrow account. These disputes continued for

several years despite numerous attempts to resolve them. Finally, on January 15, 2009, the mortgage holder filed a complaint seeking to foreclose on the mortgaged property.

In the Lucases' answer, they raised several counterclaims against the mortgage holder and third-party claims against the loan servicer asserting that each had violated various federal and state statutes and state common law. The Lucases also requested a jury trial, which was denied by the trial court and is the subject of this interlocutory appeal.

■ While a foreclosure action is essentially equitable and it is well settled that equitable claims are tried to a court rather than to a jury, the fact that a cause contains a foreclosure action does not necessarily draw the entire cause into equity. Indeed, when, as here, the essential features of the cause are not equitable, a party is entitled to a jury trial on the legal claims.

Appellants-defendants Mary Beth Lucas and Perry Lucas appeal the trial court's denial of their motion for a jury trial. Specifically, the Lucases argue that the essential features of the cause are not equitable and that even if they are, their legal claims are sufficiently distinct and severable from the foreclosure action such that they are entitled to a jury trial on their legal claims. Inasmuch as the essential features of the cause are not equitable, we reverse the judgment of the trial court and remand with instructions that the Lucases be granted a jury trial on their legal causes of actions.

## FACTS

### The Mortgage

On or about April 21, 2005, the Lucases entered into the Loan, which was secured by their home located in Solsberry, Indiana. Prior to the loan's consummation, the Lucases received all the applicable disclosures indicating that the new loan would consist of a thirty-year fixed rate note and mortgage in the amount of $85,000 with 360 monthly principal and interest payments in the amount of approximately $585.63 and an Annual Percentage Rate (APR) of 7.35%. Nevertheless, at the loan closing, Argent presented the Lucases with a "2/28 variable rate loan," meaning that for the first twenty-four months, the monthly payment would be $548.07, and for the next 335 months, the monthly payment would be $645.02. Appellant's Br. p. 4; Appellant's App. p. 69–70. Also at the loan closing, the Lucases paid for one year of hazard insurance from April 21, 2005, to April 21, 2006, and paid into an escrow account three months of their pro rata annual hazard insurance premium for the policy term from April 21, 2006, to April 21, 2007.

AMC Mortgage Servicing, Inc. (AMC), was the original loan servicer of the Loan and acted at the direction of and for the benefit of the mortgage holder to collect mortgage payments, handle escrow matters, and interact with borrowers. On August 3, 2005, less than four months after the loan closing, AMC contacted the Lucases by a letter stating that "[y]our lender's records indicate that you have not provided them with acceptable evidence of continuous insurance coverage." Appellant's App. p. 79. According to the Lucases, they contacted AMC to inform them that they had paid for their hazard insurance policy at the loan closing. In any event, AMC's escrow analysis indicates that in July 2005, it placed hazard insurance on the mortgaged property and deducted $805 from the Lucases' escrow account.

AMC's escrow analysis also indicates that a difference existed between the pro-

jected property taxes and the property taxes that were actually paid. Specifically, the escrow analysis shows that two installments were projected: one installment of $487.50 to be paid in October 2005 and one installment in the same amount to be paid in April 2006. Notwithstanding this projection, one installment of $906.02 was paid in April 2006. The Lucases claim that this caused them to become delinquent on their property taxes. Likewise, although an $832 hazard insurance premium was projected in April 2006, it was not paid.

Litton Loan Servicing, LP (Litton) became the Lucases' loan servicer on May 23, 2006, and the payment disputes continued. In particular, the Lucases were charged late fees in February, March, and April 2006, even though they claim that their payments were timely. The Lucases requested an account history, but did not receive a response that was satisfactory to them.

The Lucases filed for Chapter 7 bankruptcy protection in November 2006 and indicated on their bankruptcy application that they wanted to reaffirm their obligation on the Loan. The Lucases' Chapter 7 bankruptcy was discharged in February 2007.

Following the discharge, the Lucases claim to have "paid $2,400 of unidentified fees allegedly incurred during their Chapter 7 bankruptcy," because they were "[u]nable to get an account history and afraid that they would lose their home." Appellant's Br. p. 7. Notwithstanding the payment of these fees, Litton sent the Lucases a Notice of Default and Intent to Accelerate on October 17, 2007, claiming that the Lucases owed $1,600.

The Lucases immediately contacted Litton and were told that the $1,600 debt was comprised of fees associated with their Chapter 13 bankruptcy. The Lucases explained that their bankruptcy petition was not filed under Chapter 13 and that they had already paid over $2,000 in unidentified fees.

After several unsuccessful attempts to resolve this dispute, the Lucases sought assistance from Indiana Legal Services (ILS).[1] ILS assisted the Lucases in drafting a letter requesting specific information about the Loan. Litton responded that because the Lucases' bankruptcy petition had been discharged in February 2007, they had been charged $200 in attorneys' fees, $12.50 in inspection fees, a $100 BPO fee, and $500.51 in late charges through March 24, 2008.

On January 15, 2009, U.S. Bank National Association, as Trustee for the C–Bass Mortgage Loan Asset–Backed Certificates, Series 2006–MH–1 (U.S. Bank) filed a Complaint for Foreclosure of Mortgage against the Lucases, alleging that they had not paid according to the terms of the Note and the Mortgage. In the Lucases' Answer, they asserted, in part, that Argent had violated the Truth in Lending Act[2] (TILA), that U.S. Bank, through its agent, violated the Real Estate Settlement and Procedures Act[3] (RESPA), that U.S. Bank, through its agent, committed conversion and deception and that, accordingly, the Lucases are entitled to damages under Indiana Code section 34–24–3–1 (the

---

1. The ILS "is a nonprofit law firm that provides free civil legal assistance to eligible low-income people throughout the state of Indiana. ILS helps clients who are faced with legal problems that harm their ability to have such basics as food, shelter, income, medical care or personal safety." Indiana Legal Services, *http://www.indianajustice.org/Home/PublicWeb/About/AboutUs* (last visited July 28, 2010).

2. 15 U.S.C. § 1601 et seq.

3. 12 U.S.C. § 2601 et seq.

Civil Damages Statute). The Lucases also alleged that U.S. Bank breached its contractual obligations and its duty of good faith and fair dealing.

The Lucases also raised third-party claims against Litton. These claims included breach of contract and breach of duty of good faith and fair dealing. Additionally, the Lucases claimed that Litton violated the Fair Debt Collection Practices Act,[4] RESPA, and that they are entitled to damages under the Civil Damages Statute because Litton committed conversion. The Lucases also requested a jury trial, which was denied. On August 26, 2009, the Lucases filed a motion for trial court certification of interlocutory appeal, which this court accepted on December 4, 2009.

## DISCUSSION AND DECISION

### I. Standard of Review

■ The Lucases contend that the trial court violated their right to a jury trial as protected by Article I, section 20 of the Indiana Constitution and codified by Indiana Trial Rule 38(A) (Rule 38(A)). Whether a party is entitled to a jury trial in a civil case is a question of law to be reviewed by this court de novo. *Cunningham v. State*, 835 N.E.2d 1075, 1076 (Ind. Ct.App.2005). Accordingly, this court owes no deference to the trial court's determination of the issues presented on interlocutory appeal. *Id.*

### II. The Songer Analysis

■ Initially, we observe that Article I, Section 20 of the Indiana Constitution provides that "[i]n all civil cases, the right of trial by jury shall remain inviolate." That being said, it is well settled that this provision preserves the right to a jury trial only as it existed at common law. *Songer v. Civitas Bank*, 771 N.E.2d 61, 63 (Ind.

2002). This principle is embodied in Rule 38(A), which provides:

*Causes triable by court and by jury.* Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury unless waived; the trial of both may be at the same time or at different times, as the court may direct.

■ Accordingly, suits that were exclusively equitable prior to June 18, 1852, are to be tried by the court, issues of fact in all other suits are to be triable "as they are now triable," and when both equitable and legal causes of action are joined, the equitable causes of actions are to be tried to the court while the legal causes of action are to be tried by a jury. *Songer*, 771 N.E.2d at 64.

■ To determine whether a party to a civil case is entitled to a jury trial, we look to our Supreme Court's analysis in *Songer*. Specifically, the *Songer* Court stated:

The appropriate question is whether the essential features of the suit are equitable. To determine if equity takes jurisdiction of the essential features of a suit, we evaluate the nature of the underlying substantive claim and look beyond both the label a party affixes to the action and the subsidiary issues that may arise within such claims. Courts must look to

---

4. 15 U.S.C. § 1692 et seq.

the substance and central character of the complaint, the rights and interests involved, and the relief demanded. In appropriate cases, the issues arising out of discovery may also be important. 771 N.E.2d at 68. If the essential features of the suit are equitable and the individual causes of action are not distinct and severable, "the entitlement to a jury trial is extinguished." *Id.* Conversely, in a multicount complaint in which a cause of action is clearly equitable and the others assert "purely legal claims that are sufficiently distinct and severable, Trial Rule 38(A) requires a jury trial on the legal claims." *Id.*

■ Put another way, to determine whether a party has the right to a jury trial in a civil case, we must first consider whether the essential features of the suit are equitable. If we determine that they are, we must then decide if there are distinct and severable legal causes of action such that Rule 38(A) requires a jury trial on those claims. Only if this court determines that the essential features of the suit are equitable and that there are no distinct and severable legal causes of action will the right to a jury trial be summarily extinguished.

### III. *Application to the Instant Case*

■ In this case, U.S. Bank requested foreclosure and, to date, "the vast weight of authority holds that foreclosure actions are essentially equitable." *Id.* at 69. Nevertheless, *Songer* did not establish bright line rules based on specific causes of action; instead, the *Songer* analysis must be applied on a case-by-case basis.

In the Lucases' Answer, they assert that "U.S. Bank has not produced the original, properly executed promissory note with assignments to prove its security interest in the Defendants' property" and "has not produced a valid and properly executed

assignment of mortgage perfecting its security interest in the Defendant's [sic] home." Appellants' App. p. 49. The Lucases sought dismissal of U.S. Bank's complaint based on this failure. We agree with U.S. Bank that this assertion is so intertwined with a foreclosure action that it is essentially equitable.

Nevertheless, the Lucases also allege that U.S. Bank violated TILA, RESPA, and that they are entitled to relief under the Civil Damages Statute because U.S. Bank committed conversion and deception. The Lucases also claim that U.S. Bank breached its duty of good faith and fair dealing and breached its contractual obligations to them.

Likewise, the Lucases assert third-party claims against Litton for breach of contract and breach of duty of good faith and fair dealing. In addition, the Lucases maintain that Litton violated FDCPA, RESPA, and that they are entitled to relief under the Civil Damages Statute because Litton committed conversion.

These claims against U.S. Bank and Litton are grounded in federal and state statutory law and state common law, all of which are legal causes of action. Additionally, although the Lucases requested an injunction against U.S. Bank and Litton, which is an equitable remedy, the majority of the relief requested is money damages, which is a legal remedy. *Prime Mortgage USA, Inc. v. Nichols*, 885 N.E.2d 628, 644 (Ind.Ct.App.2008).

Moreover, the nature of many of the Lucases' claims is different from U.S. Bank's request to foreclose insofar as they are grounded in consumer protection statutes. Specifically, the purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the un-

informed use of credit." 15 U.S.C. § 1601(a). Likewise, Congress enacted RESPA "to insure that consumers ... are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges." 12 U.S.C. § 2601(a).

Congress enacted FDCPA because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Accordingly, these consumer protection statutes exist not only to make the consumer whole, but also to deter practices and behavior that negatively impacts society. In light of the nature of the claims, the rights and interests involved, and the majority of the relief requested, we cannot say that the essential features of this cause are equitable. Consequently, applying *Songer*, we must conclude that the Lucases are entitled to a jury trial on their legal claims. *See Songer*, 771 N.E.2d at 66 (holding that "[w]here equity does not take jurisdiction of the essential features of a cause, a multi-count complaint may be severed, and different issues may be tried before either a jury or the court at the same proceeding. This is consistent with the language and spirit of Rule 38(A)").

The judgment of the trial court is reversed and remanded with instructions to grant the Lucases' motion for a jury trial on their legal claims.

NAJAM, J., and MATHIAS, J., concur.