ATTORNEY FOR APPELLANTS
Christine M. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Craig D. Doyle
Mark R. Galliher
Amanda J. Maxwell
Indianapolis, Indiana

Theodore J. Nowacki
Curtis T. Jones
Katherine Welch Rarick
Indianapolis, Indiana

# In the
# Indiana Supreme Court

**FILED**

Sep 15 2011, 11:15 am

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 28S01-1102-CV-78

MARY BETH LUCAS AND
PERRY LUCAS,

*Appellants (Defendants below),*

v.

U.S. BANK, N.A. AS TRUSTEE FOR THE
C-BASS MORTGAGE LOAN ASSET-
BACKED CERTIFICATES, SERIES 2006-MH-1,

*Appellee (Plaintiff below),*

LITTON LOAN SERVICING, LP,

*Appellee (Third-Party Defendant).*

Appeal from the Greene Superior Court, No. 28D01-0901-MF-27
The Honorable Dena Benham Martin, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 28A01-0910-CV-482

**September 15, 2011**

**David, Justice.**

In this case, a mortgage holder filed a foreclosure action against the loan borrowers. In response, the borrowers asserted numerous legal defenses and claims against the mortgage holder and loan servicer. The borrowers asked for a jury trial on these defenses and claims, but the trial court denied the request. We affirm and hold that the borrowers' claims and defenses shall be tried in equity because the core legal questions presented by the borrowers' defenses and claims are significantly intertwined with the subject matter of the foreclosure action.

## Facts and Procedural History

In April 2005, Mary Beth and Perry Lucas entered into a residential mortgage loan transaction with Argent Mortgage Company ("Argent"). An escrow account was established from which the hazard insurance and property taxes were to be paid.

In August 2005, a few months after the Lucases closed on the loan, disagreements arose between the Lucases and AMC Mortgage Services ("AMC"), the original loan servicer. At issue was the escrow account: specifically, AMC and the Lucases disputed whether the Lucases provided sufficient evidence of homeowner's insurance and paid the correct amounts of property taxes.

In May 2006, Litton Loan Servicing took over as the loan servicer. Litton charged the Lucases late fees for the months of February, March, and April 2006. The Lucases claim that Litton charged these fees erroneously because the Lucases had sent timely payments for those months to AMC.

In November 2006, the Lucases filed for bankruptcy and indicated on their bankruptcy application that they wanted to reaffirm their mortgage loan. The following month, more disagreements arose, and the Lucases requested that Litton discontinue their escrow account. In February 2007, the bankruptcy was discharged. The Lucases continued to incur late fees, and in October 2007, Litton sent the Lucases a notice of default and intent to accelerate on the loan.

Several unsuccessful attempts to resolve the matter followed. In January 2008, the Lucases sent Litton a letter, requesting specific information about their loan, but Litton's response was not satisfactory to them.

In January 2009, the current mortgage holder, U.S. Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-Backed Certificates, Series 2006-MH-1, filed a complaint against the Lucases, seeking to foreclose on the mortgaged property. U.S. Bank alleged that the Lucases failed to pay monthly mortgage payments and fees according to the terms of the mortgage loan documents.

In response, the Lucases filed an answer, affirmative defenses, counterclaims, a third-party complaint, and a demand for a jury trial "on all issues deemed so triable." The Lucases alleged that U.S. Bank and Litton violated numerous statutes and the common law and that the Lucases were thus entitled to various forms of relief, including money damages. U.S. Bank then filed a motion to strike the Lucases' jury request and also categorically denied the Lucases' allegations.

After a hearing, the trial court granted U.S Bank's motion to strike the Lucases' request for a jury trial. It reasoned that U.S. Bank is seeking foreclosure, an "essentially equitable" cause of action. Accordingly, the trial court concluded that the Lucases' related legal claims and counterclaims were drawn into equity.

On discretionary interlocutory appeal, the Court of Appeals reversed the trial court's order with instructions to grant the Lucases' request for a jury trial on their legal claims. Relying on this Court's decision in Songer v. Civitas Bank, 771 N.E.2d 61 (Ind. 2002), the Court of Appeals could not conclude that the essential features of this case were equitable. Lucas v. U.S. Bank, N.A., 932 N.E.2d 239, 245 (Ind. Ct. App. 2010). We granted transfer.

**Standard of Review**

Whether certain claims are entitled to a trial by jury presents a pure question of law. Therefore, we review the issue de novo. See Cunningham v. State, 835 N.E.2d 1075, 1076 (Ind. Ct. App. 2005), trans. denied.

3

**The Right to Trial by Jury in Civil Cases**

This Court is confronted with the following issue: once a foreclosure action invokes the equity jurisdiction of a trial court, when are the borrowers' legal defenses and claims subsumed into equity?

A. *A Brief Background*

The Indiana Constitution states, "In all civil cases, the right of trial by jury shall remain inviolate." Ind. Const. art. 1, § 20. This constitutional provision preserves the right to a jury trial only as it existed at common law, and a party is not entitled to a jury trial on equitable claims. Songer v. Civitas Bank, 771 N.E.2d 61, 63 (Ind. 2002). Indiana Trial Rule 38(A) embodies this principle:

> **(A) Causes triable by court and by jury.** Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct.

Relevant to the present case is the following policy derived from Trial Rule 38(A): "when both equitable and legal causes of action or defenses are joined in a single case, the equitable causes of action or defenses are to be tried by the court while the legal causes of action or defenses are to be tried by a jury." Songer, 771 N.E.2d at 64.

This Court's decision in Songer delved into early and modern decisions on joinder of legal and equitable causes of action. More specifically, Songer addressed what some refer to as the "equitable clean-up doctrine"—a doctrine that, under certain circumstances, involves drawing legal claims into equity, thus extinguishing the right to a jury trial on those legal claims. Songer voiced concern that modern decisions on the subject "inclined toward denying a request for trial by jury whenever a complaint joins claims in law and equity on the theory that *any* claim in equity draws the whole lawsuit into equity." Id. at 62 (emphasis added and internal quotation

4

marks omitted). This Court observed that this practice incorrectly narrowed the constitutional right to a jury trial in civil cases. Id.

Songer stressed the importance of distinguishing between a "cause" and "cause of action" and recognizing that the two were not interchangeable. Id. at 68. Songer noted that the inclusion of an equitable claim, without anything more, could not justify drawing the whole case into equity. Id. Rather, a court should look at the "essential features of a suit." Id. If the lawsuit as a whole is equitable and the legal causes of action are not "distinct or severable," then there is no right to a jury trial because equity subsumes the legal causes of action. Id. On the other hand, if a multi-count complaint contains plainly equitable causes of action and sufficiently distinct, severable, and purely legal causes of action, then the legal claims require a trial by jury. Id. Songer enunciated the proper method for deciding the nature of a cause:

> To determine if equity takes jurisdiction of the essential features of a suit, we evaluate the nature of the underlying substantive claim and look beyond both the label a party affixes to the action and the subsidiary issues that may arise within such claims. Courts must look to the substance and central character of the complaint, the rights and interests involved, and the relief demanded. In the appropriate case, the issues arising out of discovery may also be important.

Id.

Songer further explained how a court would handle a suit after determining that separate and distinct legal causes of action exist: "[w]here equity does not take jurisdiction of the essential features of a cause, a multi-count complaint may be severed, and different issues may be tried before either a jury or the court at the same proceeding." Id. at 66.

B. *The Present Case*

Today this Court must apply the Songer formula, while also seeking guidance from cases that shaped that formula, to determine whether the Lucases have a right to a trial by jury on any of their claims. As a threshold matter, we lay out the various claims and defenses presented by the parties.

The present case began with U.S. Bank's complaint to foreclose on mortgaged property. The Lucases then filed affirmative defenses and counterclaims against U.S. Bank and third-party claims[1] against Litton, described in detail below:

Lucases' Affirmative Defenses Against U.S. Bank:

1.  *Improper or Ineffective Assignment of Promissory Note and Mortgage*: The Lucases alleged that "U.S. Bank has not produced the original, properly executed promissory note with assignments to prove its security interest" in the Lucases' property and that "U.S. Bank has not produced a valid and properly executed assignment of mortgage perfecting its security interest" in the Lucases' property. The Lucases asked the trial court to dismiss the complaint or require U.S. Bank to produce the documents in question.

2.  *Violation of Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667 (2006), and Its Implementing Regulation, Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. pt. 226 (2011)*: The Lucases alleged that Argent, U.S. Bank's assignor, violated various provisions of TILA by "failing to provide clear, conspicuous and accurate disclosures" and "failing to provide each [d]efendant a proper notice of right to cancel." They further alleged that Argent's "inaccurate disclosures were apparent on the face of the documents provided to U.S. Bank." The Lucases asked for recoupment: to reduce the amount they owed by the amount of actual and statutory damages available under TILA, including attorneys' fees and costs. The Lucases also asked for dismissal of the complaint.

3.  *Violation of Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617 (2006)*: The Lucases alleged that U.S. Bank, through its agent AMC, violated various provisions of RESPA "by failing to pay taxes and insurance premiums in a timely manner as such payments became due" and by "engag[ing] in the pattern or practice of non-compliance with the requirements of the mortgage servicer provisions." The Lucases again asked for recoupment and dismissal of the complaint.

4.  *Civil Conversion*: The Lucases alleged that U.S. Bank, through its agent AMC, "exerted unauthorized control over [the] property when it wrongfully converted funds from [the] escrow account to which it was not legally entitled." The Lucases asked for up to three times actual damages, attorneys' fees, and costs under Indiana Code section 34-24-3-1 (2008).

5.  *Civil Deception*: The Lucases alleged that U.S. Bank, through its agent AMC, committed civil deception by knowingly and intentionally making "false and misleading written statements with the intent to obtain money" on four separate occasions. The Lucases asked for up to three times actual damages, attorneys' fees, and costs under Indiana Code section 34-24-3-1.

---

[1] U.S. Bank correctly notes in its reply brief in support of its petition to transfer that "[a]lthough styled as a third-party claim, the Lucases' claims against Litton do not assert that Litton is or may be liable to them for all or part of U.S. Bank's claim as contemplated by [Indiana] Trial Rule 14." U.S. Bank continues, "Litton does not, however, contest that it was properly joined [under Indiana Trial Rule 20(A)] because the Lucases' claims and defenses against U.S. Bank and Litton arise out of the same transaction or series of transactions." Because the issue was not raised at the trial court and for ease of discussion, we will refer to these claims as "third-party claims" throughout the opinion.

6. *Breach of Duty of Good Faith and Fair Dealing*: The Lucases alleged that U.S. Bank, through its agent AMC, breached its duty of good faith and fair dealing when it forced placed hazard insurance, failed to pay the county property taxes timely, and failed to pay the hazard insurance renewal premium timely. The Lucases asked for actual and punitive damages.

Lucases' Counterclaims Against U.S. Bank:

1. *Breach of Contract and Promissory Estoppel*: The Lucases alleged that U.S. Bank, its assignors, or its agent breached numerous contractual obligations and promises to them, mostly related to improper allocation of payments and improper assessment of fees and charges. The Lucases asked the trial court to dismiss the complaint, order a correction and recredit of their loan account due to the breaches, and enjoin U.S. Bank from collecting amounts related to the alleged default on the note. The Lucases further requested damages.

2. *Breach of Duty of Good Faith and Fair Dealing*: The Lucases alleged that U.S. Bank, its assignors, or its agent breached this duty in numerous ways, including when it forced placed hazard insurance, failed to pay county property taxes and the hazard insurance renewal premium timely, charged certain late fees, and continued to collect fees and interest discharged in bankruptcy. The Lucases requested actual and punitive damages.

Lucases' Third-Party Claims Against Litton:

1. *Breach of Contract and Promissory Estoppel*: The Lucases alleged that Litton also breached contractual obligations, and this claim mirrors the breach of contract and promissory estoppel counterclaim against U.S. Bank.

2. *Breach of Duty of Good Faith and Fair Dealing*: The Lucases alleged that Litton breached this duty in numerous ways, including when it forced placed hazard insurance, charged certain late fees, and continued to collect fees and interest discharged in bankruptcy. The Lucases requested actual and punitive damages.

3. *Violation of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (2006)*: The Lucases alleged that Litton violated various provisions of the FDCPA by "using unfair and unconscionable means to collect the debt," "misrepresenting the character, amount and legal status of [the] debt," "threatening to foreclose on the [] home even though it has no present right to possession of the property under its assignment," and "by attempting to collect debt discharged in bankruptcy." The Lucases requested the trial court to enjoin Litton from violating the FDCPA in the future and to award the Lucases actual damages, including for mental anguish; statutory damages; attorneys' fees; and costs.

7. *Violation of RESPA*: The Lucases alleged that Litton violated various provisions of RESPA "by failing to provide [them] with the information and documentation requested," "by charging a late fee for timely payments," "by failing to pay taxes and insurance premiums in a timely manner," "by refusing to cease its collection efforts and foreclosure proceedings after receiving [the] Qualified Written Report," and "by providing information to consumer reporting agencies regarding overdue payments allegedly owed by [them] that

were related to their Qualified Written Report." The Lucases requested the trial court to enjoin Litton from violating RESPA in the future and to award the Lucases actual damages, including for mental anguish; statutory damages; attorneys' fees; and costs.

8. *Civil Conversion*: The Lucases alleged that Litton "exerted unauthorized control" over their property when it wrongfully converted funds from their escrow account to which it was not legally entitled and when it collected funds it knew were discharged in bankruptcy. The Lucases requested up to three times actual damages, attorneys' fees, and costs under Indiana Code section 34-24-3-1.

As stated above, if legal and equitable claims are joined, courts must determine whether a lawsuit is essentially equitable before drawing any legal claims into equity.

Citing Songer, the Court of Appeals concluded that the essential features of the present case were not equitable. Lucas, 932 N.E.2d at 245. The court interpreted Songer to require courts to engage in a case-by-case analysis of the various claims and not to use bright-line rules based on specific causes of action. Id. at 244. The Court of Appeals first noted that "'the vast weight of authority holds that foreclosure actions are essentially equitable.'" Id. (citing Songer, 771 N.E.2d at 69). The court then acknowledged that the Lucases' first affirmative defense—that U.S. Bank failed to produce the original promissory note and properly executed assignments to prove its security interests—was "so intertwined with a foreclosure action" that it was also a matter of equity. Id.

But the Court of Appeals reached a different conclusion on the remaining defenses, counterclaims, and third-party claims. It noted that those claims were grounded in federal and state statutory law and state common law and were all legal causes of action, and that the majority of the relief requested was money damages, a legal remedy. Id. The Court of Appeals added that the nature of these claims is different from U.S. Bank's foreclosure action because the claims are based, in part, on consumer protection statutes designed to provide meaningful disclosure of information and to protect borrowers from abusive, unfair debt collection practices. Id. at 244–45. The court noted that the purposes behind the consumer protection statutes were "not only to make the consumer whole, but also to deter practices and behavior that negatively impact[] society." Id. at 245. The Court of Appeals accordingly reversed the order of the trial court with instructions to grant the Lucases' motion for a jury trial on the legal claims. Id. We note that this is the first post-Songer decision from the Court of Appeals finding the right to a jury trial on claims in a case that also included a mortgage foreclosure claim.

8

U.S. Bank and Litton (collectively, "U.S. Bank") do not dispute the categorization of the majority of the Lucases' defenses, claims, and requested remedies as legal in nature. U.S. Bank, however, takes issue with the Court of Appeals decision in two other respects. First, U.S. Bank contends that the Court of Appeals improperly interprets and applies Songer to require courts to "balance the rights and interests involved by engaging in a case-by-case analysis of all claims, defenses, and counterclaims in a lawsuit to determine whether the essential features of the law-suit are equitable." U.S. Bank seemingly suggests that a complaint for a mortgage foreclosure would automatically bring the whole case into equity without any examination of pleaded affir-mative defenses, counterclaims, or the like. We cannot agree. Songer explicitly rejected this absolute, categorical approach and mandated that courts examine various factors—the character of the complaint, the rights and interests involved, and the relief requested—when determining whether to draw legal claims into equity. 771 N.E.2d at 68.

Next, U.S. Bank argues that even under a case-by-case analysis, the Lucases' affirmative defenses, counterclaims, and third-party claims are inextricably related to the mortgage transac-tion and thus must be drawn into equity. The Lucases counter that the Court of Appeals was cor-rect in its conclusion because this lawsuit is essentially legal. The Lucases note that cases, in-cluding Songer, "have framed the essential feature test as whether or not the causes' claims (le-gal or equitable) are central or 'incidental' to the cause as a whole." The Lucases elaborate that their legal causes of action are not incidental to the foreclosure but rather the "foreclosure cause of action is 'incidental' to" the wrongdoings of U.S. Bank and Litton, which are the bases of the Lucases' claims.

The Court of Appeals was correct in stating that many of the Lucases' claims are legal causes of action that request money damages, a legal remedy. We further note that the Court of Appeals correctly categorized many of the claims as being grounded in consumer protection sta-tutes, whose purposes include deterring certain types of practices and behaviors to protect bor-rowers. Neither of these observations can be disputed. On the other hand, we do not believe that an examination of the substance and character of the complaint, the rights and interests involved, and the relief requested is the endpoint of the inquiry. The three factors rather serve to help an-swer the overarching question of whether the legal claims are related enough to the foreclosure

9

action to be drawn into equity or are sufficiently distinct and severable to require a jury trial. Songer's facts and analysis support this approach.

In Songer, a bank filed a two-count complaint: the first count sought to collect the amount due on a note and the second count sought an order establishing the priority of the bank's lien to certain collateral and authorizing the bank to liquidate the collateral. 771 N.E.2d at 62–63. The defendant–borrower asserted no counterclaims but did assert six affirmative defenses—lack of consideration, conversion, forgery, estoppel, fraud, and lack of holder-in-due-course status. Id. at 63. The borrower requested a jury trial on the entire subject matter of the bank's complaint. Id. This Court affirmed a denial of the request for a jury trial, stating that "the essence of the claim was for a judicial pronouncement that [the bank's] possessory lien was perfected and that the collateral could be liquidated" and that "[a]t its heart, this was a suit to foreclose a lien on property." Id. at 69. This Court explained that considerable precedent holds that foreclosure actions are equitable, "[a]nd being essentially equitable, the whole of the claim is drawn into equity, including *related* legal claims and counterclaims." Id. (emphasis added). Thus, our analysis of the Lucases' claims hinges on the meaning of the word "related" in the context of equitable and legal causes of action that are present in the same lawsuit.

Several early cases which Songer cited with approval shed light on the meaning of "related." In Carmichael v. Adams, a mortgage foreclosure case, this Court stated that "[w]here questions are so closely blended and so firmly interlaced . . . there can be no severance and no separate trials." 91 Ind. 526, 527 (1883). In Towns v. Smith, a case involving an action on a promissory note and an action to set aside an allegedly fraudulent conveyance made to avoid the debt, this Court observed that the action on the promissory note "resemble[d] an ordinary action at law" but that the other claim was exclusively equitable. 115 Ind. 480, 481, 16 N.E. 811, 812 (1888). This Court concluded that "[i]n order to obtain final and more effectual relief," the legal claim should be drawn into equity. Id. And in Field v. Brown, this Court stated the following principle: "where equity takes jurisdiction of the essential features of a cause, it will determine the whole controvers*y*, though there may be incidental questions of a legal nature." 146 Ind. 293, 295, 45 N.E. 464, 465 (1896). The language from these cases suggest that the term "related" involves two critical aspects: how closely tied together are the questions presented by the equitable

10

and legal claims and whether more final and effectual relief can be obtained by invoking the equitable clean-up doctrine.

Ultimately, we believe Songer reveals that a trial court must engage in a multi-pronged inquiry to determine whether a suit is essentially equitable. Drawing on the teachings of Songer, we formulate that inquiry as follows: If equitable and legal causes of action or defenses are present in the same lawsuit, the court must examine several factors of each joined claim—its substance and character, the rights and interests involved, and the relief requested. After that examination, the trial court must decide whether core questions presented in any of the joined legal claims significantly overlap with the subject matter that invokes the equitable jurisdiction of the court. If so, equity subsumes those particular legal claims to obtain more final and effectual relief for the parties despite the presence of peripheral questions of a legal nature. Conversely, the unrelated legal claims are entitled to a trial by jury.

The present case began with U.S. Bank's complaint to foreclose on the Lucases' property. "[T]he vast weight of authority holds that foreclosure actions are essentially equitable." Songer, 771 N.E.2d at 69. We see nothing unusual about U.S. Bank's foreclosure action that would take it out of the purview of this general principle. Accordingly, it invoked the equitable jurisdiction of the trial court.

The next issue is whether any of the Lucases' legal claims are subsumed into equity. We agree with the Court of Appeals that the Lucases' first asserted affirmative defense—the improper or ineffective assignment of the promissory note and mortgage—is so "intertwined" with the foreclosure action that it is essentially a matter of equity. Lucas, 932 N.E.2d at 244. The Lucases' remaining claims assert violations of TILA, RESPA, and FDCPA and allege civil conversion, civil deception, breach of contract and promissory estoppel, and breach of duty of good faith and fair dealing. We agree with the Court of Appeals that these claims are legal causes of action and that the Lucases request legal damages for many of them. But after looking at the cause *as a whole*, we conclude that the core questions underlying the Lucases' legal claims significantly overlap with the foreclosure action that invoked the equitable jurisdiction of the trial court.

The factual contentions that underlie the Lucases' legal claims can be summarized as follows: (1) U.S. Bank or Litton misled the Lucases on the terms of the loan documents and the handling of the Lucases' monthly payments; (2) U.S. Bank or Litton failed to properly account

11

for and apply the Lucases' monthly payments to pay property taxes and insurance; (3) as a result of incorrectly calculating the Lucases' debt and misapplying the monthly payments, U.S. Bank or Litton declared the Lucases in default when in fact the Lucases were current and not liable for foreclosure; and (4) because the Lucases were current in their payments, U.S. Bank or Litton have wronged the Lucases by demanding payments the Lucases did not owe and by filing the present lawsuit when the Lucases were not in default. Ultimately, the Lucases claim that but for the unlawful actions by U.S. Bank and Litton, the Lucases would not have suffered any money damages, their account would be considered current, and the foreclosure complaint would not have been filed.

The issues from the foreclosure action boil down to (1) the terms of the parties' agreement and the payments due under those terms; (2) the amount of the Lucases' payments; (3) the application of those payments; and (4) whether the Lucases failed to pay as agreed so that U.S. Bank could rightfully take steps to collect the debt the Lucases owed. When comparing the core issues presented by the Lucases' legal defenses and claims to the core issues presented by the foreclosure action, it is evident that they are closely intertwined with one another.

The Lucases insist that for purposes of deciding whether a right to trial by jury exists, it should not matter that U.S. Bank sued first. We agree—the trial by jury inquiry is not resolved by a simple determination of who sued first. But when a foreclosure claim is filed, whether in the original complaint or as a counterclaim, it invokes the equity jurisdiction of a court. At that point, courts must examine various aspects of any asserted legal claims or defenses to determine whether to invoke the equitable clean-up doctrine. In this case, despite the inclusion of some legal claims and requests for legal remedies, we find the core legal issues overlap with the foreclosure issues to a significant degree.

We wholeheartedly recognize that the Indiana Constitution protects the right to a trial by jury for legal claims when the essential features of a civil suit are not equitable, and we do not narrow that right. But the essential features of this suit are equitable. Although there may exist isolated or peripheral issues of a legal nature, the heart of all of the legal claims in this case rest on whether the Lucases are, in fact, in default and, if so, what the amount of their debt is. Accordingly, the equitable clean-up doctrine is properly invoked, and the legal claims are subsumed into equity to obtain more final and effectual relief for the parties.

12

**Conclusion**

Equity has taken jurisdiction over the essential features of this lawsuit, including the Lucases' affirmative defenses, counterclaims, and third-party claims. Accordingly, we affirm the trial court's denial of the Lucases' request for a jury trial.

Shepard, C.J., and Sullivan, J., concur.

Dickson, J., dissents with separate opinion in which Rucker, J., concurs.

**Dickson, Justice, dissenting.**

With our unanimous opinion in <u>Songer v. Civitas Bank</u>, 771 N.E.2d 61 (Ind. 2002), this Court comprehensively analyzed one hundred and twenty years of Indiana jurisprudence related to the joining of law and equity claims, concluding:

> Recent practice and case law has inclined toward denying a request for trial by jury whenever a complaint joins claims in law and equity on the theory that any claim in equity "draws the whole lawsuit into equity." We think this narrows the right to trial by jury as guaranteed by the Indiana Constitution.

*Id.* at 62. Synthesizing and harmonizing past decisions, we carefully crafted the following rule:

> If the essential features of a suit as a whole are equitable and the individual causes of action are not *distinct or severable*, the entitlement to a jury trial is extinguished. The opposite is also true. If a single cause of action in a multi-count complaint is plainly equitable and the other causes of action assert purely legal claims that are sufficiently *distinct and severable*, Trial Rule 38(A) requires a jury trial on the legal claims.

*Id.* at 68 (emphasis added).

Today's majority opinion appears to dilute the teachings of <u>Songer</u> and its cautious respect for the right to jury trial for purely legal claims that are distinct and severable. Instead of focusing simply on whether multiple causes of action are "distinct and severable," the standard prescribed in <u>Songer</u>, the majority superimposes a further test—whether the legal claims "significantly overlap" with the subject matter of the original equitable claim. In my view, this new test may often foreclose a defendant's right to a jury trial on distinct and severable legal claims. I prefer that the analysis prescribed by <u>Songer</u> be followed without modification with the result that the defendants should not be deprived of their right to jury trial as to their purely legal claims that are sufficiently distinct and severable from the equitable foreclosure action.

Rucker, J., concurs.