## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2018, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANTS PRO SE

Willie Duncan
Zeola Duncan
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Kristin L. Durianski
Codilis Law, LLC
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Willie Duncan and Zeola Duncan,

*Appellants*,

v.

U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee,

*Appellee*.

November 30, 2018

Court of Appeals Case No. 18A-MF-1254

Appeal from the Hamilton Circuit Court

The Honorable Paul Felix, Judge

Trial Court Cause No. 29C01-1703-MF-2959

**Brown, Judge.**

[1] Willie Duncan and Zeola Duncan, *pro se*, appeal the entry of summary judgment in favor of U.S. ROF III Legal Title Trust 2015-1, by U.S. Bank National Association, as Legal Title Trustee (the "Trust"). The Duncans raise a number of issues, which we consolidate and restate as whether the trial court erred in granting summary judgment in favor of the Trust. We affirm.

### Facts and Procedural History

[2] On March 12, 2007, Zeola executed a promissory note evidencing a loan from Moore Financial Enterprises, Inc., doing business as Lenders Diversified ("Lenders Diversified") in the original principal amount of $315,000 (the "Note"). That same day, the Duncans entered into a mortgage (the "Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Lenders Diversified and its successors and assigns, granting a security interest in certain real property located in Hamilton County, Indiana, to secure repayment of the loan, which was recorded by the Hamilton County Recorder as document number 2007014786 on March 15, 2007. The Note was specifically endorsed by Lenders Diversified to CitiMortgage, Inc. ("CitiMortgage") and endorsed by CitiMortgage in blank. Pursuant to mortgage assignments dated July 6, 2015, and recorded July 13, 2015, MERS as nominee for Lenders Diversified assigned and transferred the Mortgage to CitiMortgage, which in turn then assigned and transferred it to "PROF-2013-S3 Legal Title Trust, by U.S. Bank National Association, as Legal Title Trustee" ("PROF-2013-S3"). Appellee's Appendix Volume II at 26. PROF-2013-S3

assigned and transferred the Mortgage to the Trust by an Assignment of Mortgage (the "Assignment"), dated and recorded October 21, 2016.

[3]     The Mortgage provides in part:

> **1.     Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**  Borrower[1] shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall pay funds for Escrow items pursuant to Section 3.
>
> * * * * *
>
> Lender[2] may return any payment or partial payment if the payment or partial payment are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current . . . but Lender is not obligated to apply such payments at the time such payments are accepted. . . .   No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

*Id.* at 12-13.  The Mortgage provides that Borrower shall pay to Lender "on the day Periodic Payments are due under the Note, . . .  a sum . . . to provide for payment of amounts due for: . . . (c) premiums for any and all insurance required by Lender under Section 5," and states in part under the heading "5.

---

[1] The Mortgage defines "Borrower" as the Duncans.  Appellee's Appendix Volume II at 10.

[2] The Mortgage defines "Lender" as Lenders Diversified.  Appellee's Appendix Volume II at 10.

Property Insurance" that Borrower shall "keep the improvements now existing or hereinafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards . . . for which Lender requires insurance"; that "[t]his insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires"; that "[i]f Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense"; and that any amounts disbursed by Lender under this section shall become "additional debt of Borrower" and "bear interest at the Note rate from the date of disbursement, and be payable, with such interest, upon notice from Lender to Borrower requesting payment." *Id.* at 13-14.

[4] The Mortgage further provides that, prior to acceleration, notice shall be given to Borrower which specifies the default by Borrower and the action required to cure it; a date, not less than thirty days from the date the notice is given to Borrower, by which the default must be cured; and that failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument. It states in part that, if the default is not cured on or before the date specified in the notice, "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." *Id.* at 20.

[5] On March 28, 2017, the Trust filed a Complaint to Foreclose Mortgage against the Duncans and attached the Note, Mortgage, and Assignment. The

Complaint alleged that the Duncans failed to tender monthly payments as required by the Mortgage and Note, with the initial default occurring for the month of October 2016, that the Trust was a "'person entitled to enforce' the [Note] and is entitled to enforce the terms of the Mortgage," and that the Trust elected to declare the entire balance due and owing. *Id.* at 3. The Complaint indicated that, as of March 28, 2017, the following sums were due and owing: a balance on the Note of $278,983.20; accrued interest from September 1, 2016, to March 28, 2017, totaling $6,389.86; reasonable attorney fees, title charges and court costs; accrued late charges; and all expended funds prior to and subsequent to the filing of the Complaint for payment of real estate taxes, insurance, and any other necessary repairs, maintenance, assessments, and costs. (*Id.*) The Complaint further alleged that the Trust was entitled to interest after March 28, 2017, reasonable costs and attorney fees, and advances for real estate taxes, insurance, and to preserve its security for the debt. (*Id.*) The Trust requested the entry of a personal judgment against Zeola and an in rem judgment in its favor in the sum of $285,373.06, that the court declare the Mortgage to be a valid, first and subsisting lien on the property, and that an order be entered foreclosing the Mortgage and directing the sale of the property to satisfy the debt.[3]

---

[3] The Complaint also named Med-1 Solutions, LLC ("Med-1 Solutions"), as a defendant for any interest that it may have had in the property pursuant to a judgment against Willie on December 22, 2016, in the amount of $3,183.58 rendered in cause number 29D05-1611-SC-10161 in the Hamilton County Small Claims court. It further named Preeti Singh, a/k/a Preetinder Singh, as a defendant for any interest he or she may have had in the property under a mortgage in the amount of $35,000.00 dated March 12, 2007, and recorded on March

[6]     On November 3, 2017, the Trust filed a motion for summary judgment together with a designation of materials and memorandum in support of the motion. The Trust's designated evidence includes an Affidavit in Support of Judgment by a foreclosure specialist of Fay Servicing, LLC ("Fay Servicing"), which states that the Trust was the holder of the Note, that Zeola defaulted pursuant to the terms of the Note by failing to tender the monthly payments when due, that the default has not been cured, that the Trust has elected to claim the entire balance due in accordance with the terms of the Mortgage and Note, and that the amount due on the loan, including interest from September 1, 2016, through September 28, 2017, late charges, and total advances made by the Trust, totaled $303,098.70. The Trust also designated an affidavit of attorney fees, costs, and expenses in the total amount of $3,093.67.

[7]     A December 1, 2017 entry in the chronological case summary ("CCS") indicates that the Duncans filed "Addendum 11/29/17," and states "[o]rder submitted,"[4] and on December 12, 2017, the Trust filed a Reply to Defendants'

---

15, 2007, in Hamilton County as document number 2007014787. The Trust alleged that both interests were subordinate and inferior to its interest.

An April 3, 2017 entry in the chronological case summary ("CCS") states that Med-1 Solutions was served, and the court's May 9, 2018 Summary Judgment of Foreclosure found that Med-1 Solutions failed to appear and was defaulted. An April 12, 2017 CCS entry states "Party Served: . . . Singh, Preeti" and "Hamilton County Sheriff Return, Summons, TOD 4/10/17, mailed copy 4/11/17," and a June 2, 2017 CCS entry indicates that Singh filed an answer to the Complaint, which is not included in the record on appeal. Appellants' Appendix Volume II at 6. The court's May 9, 2018 Summary Judgment of Foreclosure found Singh's "rights and interests . . . inferior to the lien and interest" of the Trust. *Id.* at 17. Singh does not join in this appeal.

[4] Neither party provides in their briefs on appeal citation to the record for a copy of either "Addendum 11/29/17" or the court's order. Appellants' Appendix Volume II at 9. We observe that the Appellants' Appendix contains a copy of a letter written by the Duncans that bears an indecipherable file stamp and

Response to Motion for Summary Judgment. Appellants' Appendix Volume II at 9. On April 30, 2018, the court held a hearing on the motion for summary judgment, at which Willie presented oral argument and the court reviewed written material, which Willie presented, "as argument inasmuch as it may tend to show that the Plaintiff has not met its burden of proof." Transcript at 8. On May 9, 2018, the court issued its Summary Judgment of Foreclosure in favor of the Trust, finding in part that $306,192.37 was due and owing to the Trust as a valid subsisting lien as set forth in its affidavits.

## *Discussion*

[8] The issue is whether the trial court erred in granting summary judgment in favor of the Trust. Although the Duncans are proceeding *pro se*, such litigants are held to the same standard as trained attorneys and are afforded no inherent leniency simply by virtue of being self-represented. *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014) (citing *Matter of G.P.*, 4 N.E.3d 1158 (Ind. 2014)). This Court will "not become an advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Basic v. Amouri*, 58 N.E.3d 980, 984 (Ind. Ct. App. 2016), *reh'g denied*.

[9] When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to

which contains on the first page the words "Addendum November 29, 2017" underneath "June 29, 2017." *Id.* at 42.

judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The party moving for summary judgment has the burden of making a *prima facie* showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Once these requirements are met, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm a trial court's grant of summary judgment upon any theory or basis supported by the designated materials. *Id.*

[10]   The Duncans argue that the foreclosure ruling was "merely done on delinquency" rather than "on the eviden[ce] of the case." Appellants' Brief at 4. They contend, without citation to authority, that the "focus of the case should ha[ve] been on who . . . caused the delinquency," *id.* at 5, and state "[i]t is agreed that the loan is in delinquency" and "[w]hat is not agreed is: who caused the delinquency?" Appellants' Reply Brief at 3. They further assert certain exhibits were "not allowed to be presented in the summary hearings," the Trust filed for foreclosure "while FayServicing was correcting the escrow to adjust the monthly installment," and that the "foreclosure filing violated the

notice [requirements of the] fair debt collection practices act."[5]  Appellants'
Brief at 3-4.  The Trust maintains that there is no genuine issue of material fact
and that the court properly granted summary judgment.

[11]     To the extent the Duncans fail to cite to relevant authority or relevant portions
of the record or develop an argument with respect to the issues they attempt to
raise on appeal, those arguments are waived.  *See Loomis v. Ameritech Corp.*, 764
N.E.2d 658, 668 (Ind. Ct. App. 2002) (holding argument waived for failure to
cite authority or provide cogent argument), *reh'g denied*, *trans. denied*.  We
additionally observe that the Duncans do not include, under separate headings,
a statement of issues, a statement of case, or a statement of facts in accordance
with a proper standard of review, and that, to the degree that the Duncans
provide citations, they are not in compliance with Rule 22(C).  *See* Indiana
Appellate Rule 46(A).

[12]     To the extent that the Duncans argue that the grant of summary judgment in
favor of the Trust is improper, the only authority they cite is to "15 USC
1692:91 STAT.874:PUB.L.95-109(September 20, 1977 amended by
100Stat.768, Public Law 99-361" and to "fair collection laws that require[] any

---

[5] To the extent the Duncans argue that the trial court erred in not granting a motion to be heard by a jury and cite the Seventh Amendment of the United States Constitution, we observe that state law, including the state constitution and trial rules, governs whether a right to a jury trial exists in a suit brought in state court even if the cause of action arises under federal law, *see Midwest Sec. Life Ins. Co. v. Stroup*, 730 N.E.2d 163, 171 (Ind. 2000) (citing federal authority), and further that Article 1, Section 20 of the Indiana Constitution "preserves the right to a jury trial only as it existed at common law, and a party is not entitled to a jury trial on equitable claims." *Lucas v. U.S. Bank, N.A.*, 953 N.E.2d 457, 460 (Ind. 2011) (citing *Songer v. Civitas Bank*, 771 N.E.2d 61, 63 (Ind. 2002)).

debt collector to give thirty days' notice of the intent to proceed into foreclosure." Appellants' Brief at 3. Appellants' Reply Brief at 3. We observe that 15 U.S.C. § 1692g(a) provides in part that the "debt collector shall . . . send the consumer a written notice containing . . . a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(b) provides in part that:

> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy . . . is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.

We note that the Appellants' Appendix contains a copy of a Notice Pursuant to Fair Debt Collection Practices Act, dated March 16, 2017, and addressed to Willie, which states that "[u]nless you, within thirty days after receipt of this Notice, dispute the validity of the debt, or any portion thereof, we will assume that the debt is valid," and that "[i]f you notify us in writing within thirty days, after receipt of this Notice, that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy . . . will be mailed to you." Appellants' Appendix Volume II at 21. We further note that the Appellants'

Appendix includes a copy of the Duncans' letter, dated April 12, 2017, and addressed to the Trust, which states "Fay Servicing . . . caused this mortgage to be late in payments," as well as a copy of a letter dated April 24, 2017, and addressed to the Duncans, that states that it serves as a verification of the debt, that it enclosed reinstatement and payoff quotes, copies of the Mortgage, Note, assignments, loan modification, and a payment history, and that it referred the Duncans to "the letter you received from Fay Servicing's Compliance Department dated February 27, 2017" that "provides a complete history of the circumstances giving rise to your current complaint." *Id.* at 22. Accordingly, we cannot say summary judgment was improper on this basis.

[13] The record reveals that the Note indicates that Zeola promised to pay the lender, identified as Lenders Diversified, the principal amount of the loan plus interest. The Note expressly provided that the lender could transfer the Note. The endorsements attached to the Note show it was endorsed by Lenders Diversified to CitiMortgage and by CitiMortgage in blank. The recorded Mortgage, executed by the Duncans in favor of MERS as nominee for Lenders Diversified and its successors and assigns, granted a security interest in the property to secure repayment of the loan, and was assigned through a series of mortgage assignments to the Trust. The Trust designated an affidavit by the foreclosure specialist of Fay Servicing, which states that the Trust was the holder of the Note, that Zeola defaulted pursuant to the terms of the Note by failing to tender the monthly payments when due, that the default was not cured, that the Trust elected to claim the entire balance due in accordance with

the terms of the Mortgage and Note, and that the amount due on the loan, including interest from September 1, 2016, through September 28, 2017, late charges, and total advances made by the Trust, totaled $303,098.70. The designated evidence also includes an affidavit of attorney fees, costs, and expenses which states that the Trust incurred a total of $3,093.67. The Duncans do not dispute that the "loan is in delinquency." Appellants' Reply Brief at 3. The designated evidence supports the court's determination that the Duncans were in default under the terms of the Note and Mortgage.

[14] The Duncans also cite to "Exhibit 4" for the propositions that Fay Servicing "had put two insurances on the property" and "admitted to sending back the installment which began the delinquency." Appellants' Brief at 4. Even assuming the February 7, 2017 letter marked with the words "Exhibit 4" in the Appellants' Appendix was designated, the letter states in part "[t]he account currently displays . . . a total outstanding monthly installment balance of $10,632.69," "[b]e advised that payment funds were returned to you . . . because the account was in a pre-foreclosure status at the time as it was more than sixty days past due," and "[a]s such, please understand that we could only accept the full amount due to cure the default." Appellants' Appendix Volume II at 30. The Mortgage provides that Borrower shall maintain property insurance "in the amounts (including deductible levels) and for the periods that Lender requires," that if Borrower fails to maintain the coverage, Lender "may obtain insurance coverage, at Lender's option and Borrower's expense," and that any amounts disbursed by Lender "shall become additional debt of

Borrower" and "bear interest at the Note rate from the date of disbursement, and be payable, with such interest, upon notice from Lender to Borrower requesting payment." Appellee's Appendix Volume II at 14. The Mortgage further provides that the Lender "may return any payment or partial payment if the payment or partial payment are insufficient to bring the Loan current" and "is not obligated to apply such payments at the time such payments are accepted" and that no offset or claim which Borrower might have "shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument." *Id.* at 12-13. We conclude that the trial court did not err in granting summary judgment in favor of the Trust.

## Conclusion

For the foregoing reasons, we affirm the rulings of the trial court and the entry of summary judgment in favor of the Trust.

Affirmed.

Altice, J., and Tavitas, J., concur.